UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


| | | |
|---|---|---|
| ANGELO GREGORY-RIVAS | ) | |
| 1358 Spring Road, NW | ) | |
| Washington, DC 20010 | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA | ) | Civil Action No: |
| A Municipal Corporation | ) | |
| One Judiciary Square | ) | |
| 441 Fourth Street, N. W. | ) | |
| Washington, D.C. 20001 | ) | |
| | ) | |
| serve: | ) | |
| ANTHONY WILLIAMS, Mayor | ) | |
| District of Columbia | ) | |
| 1350 Pennsylvania Avenue, N. W., 5th Fl. | ) | |
| Washington, D.C. 20002 | ) | |
| | ) | |
| ROBERT SPAGNOLETTI | ) | |
| Attorney General | ) | |
| 1350 Pennsylvania Avenue, N. W., Ste. 409 | ) | |
| Washington, D.C. 20004 | ) | |
| and | ) | |
| | ) | |
| DR. CLIFFORD JANEY(officially) | ) | |
| Superintendent, D.C. Public Schools | ) | |
| 825 North Capitol St., N. E., Suite 9026 | ) | |
| Washington, D.C. 20002 | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE AND OTHER RELIEF

**COMES NOW**, the Plaintiff, by and through his attorney, Roxanne D. Neloms, and the Law Offices

of James E. Brown & Associates, P.L.L.C, and respectfully unto this Honorable Court as follows

that:

## JURISDICTION

1.    This Court has jurisdiction pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C Sections 1400-1461; the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. Sections 794; 42 U.S.C. Section 1983; 28 U.S.C. Section 1331 and 1343 and 5 D.C. Municipal Regs. Sections 3000.1 et seq.

2.    Declaratory relief is authorized by 28 U.S.C Sections 2201; 2202.

3.    Venue is proper in this Court pursuant to 28 U.S.C. Section 1391.

## PARTIES

4.    Angelo Gregory Rivas, hereinafter "A.R.", initiates this cause of action on his own behalf in his own right.

5.    A.R.'s birth year is 1985 and at all times relevant to the filing of this suit, resides in the District of Columbia.

6.    Defendant, the District of Columbia Government is a municipal corporation that receives federal funds pursuant to the Individuals with Disabilities Act ("IDEA"), to ensure access to a free and appropriate education ("FAPE") and is obligated to comply with the applicable federal regulations and statutes including but not limited to the IDEA.

7.    Defendant, Clifford B. Janey, Ed. D, being sued in his capacity as the Superintendent of the District of Columbia Public School System ("DCPS") which is the State

Educational Agency ("SEA"), charged with responsibility of ensuring that all disabled children in the District of Columbia receive access to a free and appropriate public education "FAPE" and to ensure them equal protection and due process of law.

## FACTUAL BACKGROUND

8.    For more than five years, A.R. had been identified as a special education student within the District of Columbia Public School System, with the disabilities of learning disabled and emotionally disturbed.

9.    By the time A.R. reached his senior year at Wilson SHS, his last known IEP had been developed in March 2002, and his behavior began to take a turn for the worse as he was going to be expelled for throwing eggs at his classmates.

10.   A.R.'s guardian sought legal help and in November 2004 an administrative due process hearing request had been filed alleging, among other things, that A.R. had been denied access to a free and appropriate education because DCPS failed to convene a manifestation meeting prior to expulsion, failed to convene annually to review A.R.'s IEP, and failed to transfer the student's rights upon the age of majority. *See Exhibit 1 November 2004 Administrative Due Process Hearing Request*

11.   As a result of the filing of the hearing request, DCPS entered into a settlement agreement with the parent, whereby, DCPS agreed to convene a MDT meeting within thirty days (30) to review and revise A.R.'s Behavior Intervention Plan and IEP, and discuss the student's transfer of rights. *See Exhibit 2 December 2004 Settlement Agreement*

12.  Because DCPS failed to honor the December 2004 Settlement Agreement, another administrative due process hearing request had been filed alleging denial of FAPE. *See Exhibit 3 January 2005 Administrative Due Process Hearing Request*

13.  In addition to requesting that DCPS comply with the settlement agreement, the parent requested compensatory education services be provided to A.R. and that his outstanding evaluations be reviewed. *Id.*

14.  In lieu of a hearing, DCPS entered into a settlement agreement and agreed to convene a MDT meeting within twenty schools days (20) to review the student's outstanding evaluations, revise and update the student's IEP, discuss compensatory education, placement, and discuss and determine the student's transfer rights. *See Exhibit 4 February 2005 Settlement Agreement.*

15.  Simultaneously, DCPS provided a copy of a May 2004 IEP for A.R. which was virtually identical to the March 2002 IEP. That IEP contained no information regarding A.R.'s progress in any of his classes. *See Exhibit 16 May 2004 IEP*.

16.  The May 2004 IEP provided for twenty-two and one-half hours (22.5) of specialized instruction and one and one-half hours (1.5) of counseling. *Id.*

17.  A.R. was to receive services in the areas of reading/English, mathematics, writing, social emotional, transition, and receptive/expressive language skills. *Id.*

18.  A.R. indicated in that meeting that he had aspirations to attend college. *Id.*

19.  The May 2004 IEP noted that Angelo was on the diploma track and that a transition plan would be developed after a vocational was completed. *Id.*

20.  His IEP further described his accommodations and modifications as extended time;

small classroom and group; pre-written notes and the use of a calculator. *Id.*

21.    In May 2005 counsel for the petitioner filed a hearing request alleging that DCPS failed to convene a MDT meeting in accordance with the February 2005 settlement agreement whereby, DCPS agreed to discuss among other things, compensatory services, and for DCPS' failure to re-evaluate A.R. *See Exhibit 6 May 2005 Administrative Due Process Hearing Request*

22.    Counsel for the petitioner submitted an amended administrative due process hearing request alleging that because the student had not received specialized instruction for four years (4) he was due compensatory services for that amount of time. *See Exhibit 7 June 14 2005 Administrative Due Process Hearing Request.*

23.    At the June 24 th, 2005 hearing counsel for the petitioner argued that DCPS denied A.R. access to a free and appropriate education when it failed to comply with the February 2005 settlement agreement, requiring DCPS to convene a MDT meeting to review and revise his IEP, complete reevaluations, and therefore A.R. is due compensatory education services. *See Exhibit 24 June 24, 2005 Transcript.*

24.    On the other hand,  DCPS argued that the case should be dismissed because A.R. graduated from high school with a diploma and was not entitled to compensatory education services. *Id.*

25.    Moreover, DCPS argued that it could not put on its case and would need a continuance to gather its witness. *Id.*

26.    Due to the many issues being addressed the hearing officer continued the case to provide each counsel the opportunity to brief the issue of whether a student who

graduated from high school entitled to compensatory education services. *See Exhibit 9 August 2005 Hearing Officer's Determination.*

27.    An August 2005 Hearing Officer's Determination found, among other things, that a student's right to compensatory education is not terminated by graduating from high school, and further determined that DCPS failed to comply with a February 2005 settlement agreement in which DCPS agreed to discuss compensatory education. *Id.*

28.    While the August 2005 HOD failed to address the issue of DCPS' failure to re-evaluate the student it ordered DCPS to convene a MDT meeting within 30 calendar days of its issuance to discuss and determine the amount of compensatory education services Angelo was due and to develop a plan reflecting the amount.

29.    Because DCPS failed to hold the meeting within 30 days of the issuance of the August 2005 decision, counsel for the petitioner filed another hearing request alleging DCPS' failure to hold the meeting and develop a compensatory education plan. *See Exhibit 10  October 2005 Administrative Due Process Hearing Request.*

30.    DCPS finally held the meeting on November 30th, 2005 a day before the hearing was to occur on December 1st, 2005.  At that meeting DCPS determined that A.R. had no entitlement to compensatory education services.  *See Exhibit 12 November 30 th, 2005 MDT Meeting Notes.*

31.    At the MDT meeting, the advocate requested copies of tracking forms and IEP report cards for A.R. Unfortunately,  DCPS could only provide copies of tracking forms from March 2003 to June 2003 and September 2003. DCPS could provide no IEP report cards. *Id.; see Exhibit 13 Encounter Tracking Forms.*

32. At the November 2005 meeting it was revealed that Angelo only received specialized instruction in US Government. His course schedule for the 2005-2006 school year indicated the following: Photo technology, financial planning, conversational Spanish; body conditioning, concert choir, marching band and computer applications. *Id. at Exhibit 12.*

33. DCPS further alleged at the November meeting, which was not attended by any of his teachers nor services providers, that the only reason Angelo did not receive specialized instructions was because he did not request help from his case manager. *Id.*

34. As a result of DCPS' failing to comply with the August 2005 HOD, at the December 1st, 2005 hearing, counsel for A.R. requested compensatory relief for missed services in the form of a laptop computer with the appropriate software and tutoring would assist him in passing his remedial courses. *See Exhibit 27 December 1st, 2005 Transcript.*

35. A.R. testified that as a student at the University for the District of Columbia he was having great difficulty in keeping up in his remedial courses (reading improvement, English fundamentals, and basic mathematics). *Id. at Exhibit 27.*

36. He testified of his certainty of failing his remedial course and due to that failure he would be unable to continue with a college education. *Id.*

37. He indicated that while attending Wilson SHS , he received specialized instruction in U.S. Government and conversational Spanish. Other than that he did not receive any assistance, no tutoring, and never met with a case manager during his senior year. *Id.*

38.    DCPS did not present any documents to rebut the issue of whether A.R. actually received specialized instruction. DCPS continued to assert that A.R. did not receive specialized instruction because he did not request assistance. *See Exhibits 12 & 27.*

39.    Hearing Officer Terry Banks, in his December 2005 Hearing Officer Determination, decided that A.R. was not entitled to compensatory education services because A.R. failed to sustain his burden and demonstrate that he was in need of compensatory services.

## I. THE HEARING OFFICER ERRED WHEN HE FAILED TO FIND THAT DCPS HAD VIOLATED THE AUGUST 2005 HEARING OFFICERS DETERMINATION.

40.    The hearing officer erred in this matter because the only issue before him was whether DCPS complied with the August 2005 HOD.

41.    The August 2005 HOD required DCPS to convene a MDT meeting within thirty days of the issuance of the HOD. *See Exhibit 9; see also Exhibit 27.*

42.     At the December 2005 hearing, counsel for A.R. argued that DCPS failed to comply with the August 2005 HOD and develop a compensatory education plan and further argued that based on A.R.'s achievement scores and his failure to pass an entrance exam into UDC evinces that A.R. was entitled to compensatory education services.

43.    DCPS continued to argue that because A.R. failed to request assistance the District was not obliged to provide him with services. *See Exhibit 27.*

44.     In the December 2005 HOD, the hearing officer concluded that because the
        August 2005 HOD did not award the student with a specified amount of
        compensatory services hours that left open the possibility of the MDT team to
        state there were no to be provided. ***See Exhibit 11.***

45.     In *Thomas v. District of Columbia*, the Court noted that earlier rulings constituted
        "constructive findings" of the denial of FAPE and a violation of the IDEA. *See
        Thomas v. D.C.,* 407 F. Supp.2d 102 (July 2005). The hearing officer erred when
        he allowed DCPS to relitigate the issue of whether A.R was entitled to
        compensatory services. It is an error that violates IDEIA as stated in    *Helms v.
        McDaniel*, 657 F.2d 800, 805 (5th Cir. 1981) (To appoint an officer to conduct the
        hearing but then to treat his report only as a recommendation violates the Act's
        requirement that the decision of the hearing officer be final unless appealed.")

46.     The evidence of record demonstrated that DCPS had violated several Hearing
        Officer's Determinations and settlement agreements prior to the August 2005
        HOD.

47.     The August 2005 HOD ordered DCPS to convene a MDT meeting within in 30
        days to discuss and determine the amount of compensatory education services due
        and develop a plan.

48.     Indeed DCPS, did not convene the meeting until a day before the scheduled
        hearing, well past the time line indicated in the August 2005 HOD. Holding the
        meeting one day before a hearing demonstrates DCPS' nonchalant attitude in
        complying with Hearing Officer's Determinations.

49.     The ability of DCPS to ignore countless settlement agreements and hearing

officer's decisions undermines the administrative due process avenue available to

parents.

50.     The hearing officer exceeded the scope of his authority and erred when did not

address the issues presented before him in the administrative due process hearing

request.


## II. HEARING OFFICER ERRED WHEN HE RELITIGATED THE MERITS OF THE CASE AND FAILED TO PROVIDE THE STUDENT WITH COMPENSATORY SERVICES.

51.     In addition, to failing to find that DCPS had not complied with the August 2005

HOD, Hearing Officer Banks erred when allowed DCPS a second bite at the apple

to relitigate the issue of A.R.'s entitlement to compensatory education.

52.     He reasoned that because A.R. desired to obtain a high school diploma, this

obviate DCPS' obligation to provide specialized instruction and related services.

53.     He supported this contention by stating that A.R.'s high school transcript evinced

his ability to perform adequately in general education courses and that he had the

right to take electives instead of special education courses.

54.     The hearing officer erred because a determination of FAPE rests on whether a

student had access to specialized instruction and related services which would

have made learning possible.

55.     In addition, a person's right to compensatory education will not disappear because

he or she has obtained a high school diploma. That student is still entitled to

compensatory education services for all denials of FAPE which occur during that time spent in school.

56.    He further erred because he failed to apply the *Reid* standard and award A.R. with compensatory education services. Hearing Officer Banks incorrectly determined that A.R. failed to demonstrate why he should be awarded compensatory education.

57.    34 CFR 300.121 states that "each state shall ensure that FAPE is available to any individual child with a disability who needs special education and related services, even though the child is advancing from grade to grade.

58.    The regulation is clear that passing a course or coursework does not evidence that a person is receiving access to a free and appropriate education. See *34 C.F.R 300.121*

59.    The purpose of special education is to ensure that all children with a disability have access to a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living.  See 20 U.S.C 1400 (d).

60.    While the August 2005 HOD failed adhere to the *Reid* standard, which dictates that a hearing officer must make a decision and further dictates that an award of compensatory services must be designed to according to that particular student's needs, it is clear that in this case, A.R. testified that he had been denied FAPE  for quite some period of time. ***See Exhibit 13; see also Exhibit 27 and Exhibit 19***

### *April 2002 Educational Re-Evaluation Report.*

61.    The hearing officer denied A.R. compensatory education services because he

claimed that A.R. "did not make a showing that would satisfy the standard set out

in *Reid*....[p]etitioner had the burden of showing that (1) that as a result of DCPS'

violation of IDEA, he suffered an educational deficiency, (2) that but for the

violation, he would have progressed to a certain academic level, and (3) that there

exists a type and amount of compensatory education services that would bring him

to the level he would have been by [but] for DCPS' violation." *See December 2005*

*Hearing Officer's Decision.*

62.    This determination was in error because 1) the burden Hearing Officer Banks

placed on A.R. had never been articulated in *Reid* and 2) A.R., the educational

advocate and the special education coordinator offered testimony which

demonstrated that A.R.'s IEP had not been implement while attending Wilson

SHS.

63.    The April 2005 re-evaluation provided by DCPS indicated A.R.'s grade level in the

following content areas: word reading 9.8; reading comprehension 4.4; numerical

operations 5.8; math reasoning 5.4; spelling 8.8; and written expression 10.4.

   *See Exhibit 19.*

64.    More importantly, DCPS could not offer any documents or testimony which

rebutted A.R.'s testimony regarding his need for compensatory education services.

*See Exhibit 27.*

65.    A.R. testified that he had not received any assistance in school and that his ability to

pass his classes was done on his own accord; moreover, none of his teachers were certified to deliver specialized instruction in his courses.

66.   While DCPS argued that A.R. did not need specialized instruction in elective course, counsel for the petitioner cross-examined the special education coordinator as to content of the courses and the content of A.R.'s IEP.

67.   Evidence of record demonstrated that according to A.R.'s IEP he was to receive specialized instruction in reading, English, and math; therefore, those course that incorporated those content areas required specialized instruction.

68.   A.R.'s IEP represented more than 22.5 hours of specialized instruction and DCPS could only offer proof that A.R. only received several hours of specialized instruction.

69.   DCPS failed to provide any service related records or IEP reports which would have demonstrated the delivery of services or instruction.

70.   Hearing Officer Bank has misinterpreted the purpose of special education, A.R. is entitled to receive access to a free and appropriate education and along with that he can receive a high school diploma and thus should be compensated for missed services as a result of DCPS failure to provide FAPE.

71.   Compensatory education awards should be designed to restore children with special education needs in the same position they would have occupied but for the school district failing to adhere to the provisions of IDEA (reauthorized as Individuals with Disabilities Education Improvement Act of 2004).

72.   Counsel for the petitioner originally filed a hearing request in November 2004 alleging a series of denials which amounted in A. R. not receiving FAPE, and thus

had been requesting compensatory education services for services that had been denied while attending Wilson S.H.S.

73. The Court in *Reid* indicated that compensatory education plans must do more than provide a cookie-cutter approach. In its reasoning, the Court reiterated that the premise of special education services were to be designed and developed based on a child's unique needs and as such a compensatory education award had to operate in the same manner.

74. Therefore, any award must be designed to consider that child's unique needs and "must be reasonably calculated to provide the educational benefits that likely would have occurred but for the schools failure to provide such services.

75. Assuming *arguendo*, that the hearing officer had the ability to relitigate this issues that were presented, he failed to find that DCPS had denied A.R. FAPE.

76. The record indicated that A.R. had not progressed over the years as DCPS claimed for instance, in *Kevin T., W.T., and K.T. v. Elmhurst Community School District,* (Ill. 2005) the court found that independent evaluations and standardized test scores demonstrate that a child is not receiving educational benefit.

77. Thus, contrary to Hearing Officer Bank's determination, A.R. demonstrated that prior to his graduating he had not received educational benefit through his IEP as represented by his psycho-educational and currently his inability to pass entrance exams for college.

78. More poignantly, was DCPS inability to rebut A.R.'s testimony of their failure to assist him, the special education coordinator could only offer that the reason A.R. did

not receive specialized instruction was because he did not request it.

79.     This Honorable should find that the hearing officer erred in allowing DCPS to

relitigate an issues that had been previously resolved and find that A.R. is due

compensatory education services.

**Wherefore**, the plaintiff prays that this Court:

1. Reverse the December 2005 Hearing Officer's Decision and enter a finding

against the defendant;

2. Issue the appropriate injunctive relief requiring the Hearing Officer to develop a

comprehensive compensatory education plan;

3. Award Plaintiff's attorney fees and costs of this action;

4. Award any other relief that the Court deems just and proper.


Respectfully submitted,


Roxanne D. Neloms
D.C. Bar No. 478157
James E. Brown & Associates, PLLC
1220 L. Street, NW, Suite 700
Washington, DC 20005
(202)742-2000 (Tele.)
Counsel for Plaintiff

# A.R.'s PLEADING INDEX

**EXHIBITS**

1.   November 9th, 2004 Administrative Due Process Hearing Request
2.   December 20th, 2004 Settlement Agreement
3.   January 21st, 2005 Administrative Due Process Hearing Request
4.   February 15th, 2005 Settlement Agreement
5.   March 2005 Letter requesting Reevaluations
6.   May 12th, 2005 Administrative Due Process Hearing Request
7.   June 14th, 2005 First Amended Due Process Hearing Request
8.   June 24th, 2005 Hearing Officer's Decision
9.   August 15th, 2005 Hearing Officer's Decision
10.  October 1st, Administrative Due Process Hearing Request
11.  December 2005 Hearing Officer's Decision
12.  November 30th, 2005 MDT Meeting Notes with Advocate Meeting Notes
13.  2003-2004 Encounter Tracking Forms
14.  A.R.'s Pupil Permanent Record
15.  A.R.'s Report Card
16.  May 2004 Individualized Educational Plan
17.  February 2002 individualized Plan
18.  March 2002 Meeting Notes
19.  April 2002 Educational Re-Evaluation Report
20.  March 2005 Medical Examination Report
21.  May 2001 Psychiatric Evaluation
22.  October 2000 Socio-Cultural Report
23.  September 2000 Psycho-Educational Evaluation
24.  October 2000 Speech and Language Evaluation
25.  December 1st, 2005 Letter requesting a transcript of an August 15th, 2005 Hearing
26.  June 24, 2005 Transcript
27.  December 1, 2005 Transcript