# EXHIBIT 26

wtk                                                                    1

T7006                GOVERNMENT OF THE DISTRICT OF COLUMBIA

                        DEPARTMENT OF PUBLIC SCHOOLS

                          OFFICE OF STUDENT HEARINGS


- - - - - - - - - - - - x
                         :
In the Matter of:        :
                         :
ANGELO RIVAS-GREGORY     :
                         :
- - - - - - - - - - - - x

                              Washington, D.C.

                              Friday, June 24, 2005

            The above-entitled matter came on for

hearing, pursuant to notice.

BEFORE:

            COLES RUFFIN, Hearing Officer

APPEARANCES:

      On Behalf of the Student/Parent:

            ROBERTA GAMBALE, ESQ.


      On Behalf of D.C. Public Schools:

            KATHERINE RODI, ESQ.
             DOMINIC HALL, ESQ.




        [TRANSCRIPT PREPARED FROM A TAPE RECORDING.]

wtk

2

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C. 20003-2802
(202) 546-6666

1                    P R O C E E D I N G S

2            HEARING OFFICER RUFFIN:  Good afternoon,

3    today's date is June 24, 2005, I'm Coles Ruffin,

4    Independent Hearing Officer.

5            This is an Administrative Hearing being

6    conducted under the Individuals With Disabilities

7    Education Act in the matter of Angelo Gregory

8    Rivas?

9            MR. RIVAS:  Rivas, yes.

10           HEARING OFFICER RUFFIN:  Rivas, date of

11   birth November 4, 1985.  '85?

12           MR. RIVAS:  Mm-hmm.  Recent graduate, sir.

13           HEARING OFFICER RUFFIN:  Oh, just

14   graduated?

15           MR. RIVAS:  Yes, this year.

16           HEARING OFFICER RUFFIN:  EMR?

17           MR. RIVAS:  ED/LD.

18           HEARING OFFICER RUFFIN:  ED/LD?

19           MR. RIVAS:  Mm-hmm.

20           HEARING OFFICER RUFFIN:  I would expect

21   nothing less from an ED/LD.  Great.  Could you all

22   identify yourselves, please?

wtk                                                                          3

1              MS. RODI:   Katherine Rodi, Attorney

2     Advisor, DCPS.

3              MS. GAMBALE:   Roberta Gambale, attorney

4     for the Parent.

5              MR. HILL:   Dominic Hill, of counsel

6     attorney with the law firm of James E. Brown and

7     Associates.

8              HEARING OFFICER RUFFIN:   Do you waive the

9     reading of formal rights.

10             MS. GAMBALE:   We would.

11             HEARING OFFICER RUFFIN:   I have a

12    disclosure statement, witness list and 14 documents

13    be admitted and DCPS has submitted a witness list

14    and one document.   What have we got here, what are

15    the issues?

16             MS. GAMBALE:   Well, there are three

17    primary issues:   First, DC was supposed to--they

18    entered a settlement agreement back in February;

19    they were supposed to reconvene by March 15, 2005,

20    they didn't do it.

21             Second, they were supposed to re-evaluate;

22    they missed his triennials and the Parent made a

1    request that they never responded to; and they

2    didn't do it.   There was a psycho-ed and clinical

3    that we requested in March; and there was a

4    vocational that was requested by the Parent in the

5    May 2004 meeting notes, that was never done.

6            The third issue is comp-ed because he

7    didn't get his services for the past four years.

8    He hasn't gotten the full extent of his services.

9    And so, we're here to seek out comp-ed to seek out

10   the evaluations.

11           He has graduated, but they never

12   reconvened to see if he's actually mastered any of

13   his goals and objectives.   And those goals and

14   objectives actually went back to 2001.   They never

15   reconvened to see if--they haven't given him his

16   full vocational transitional services.

17           What we've asked for is six hours of

18   comp-ed per week for four years to make up for what

19   they didn't provide to him.

20           HEARING OFFICER RUFFIN:   Is he going to

21   college?

22           MS. GAMBALE:   Well, at this point, we

1   don't know.  He had--that was his goal was to go to

2   college, some kind of post-secondary educational

3   program.  And he's--

4           HEARING OFFICER RUFFIN:  UDC?  [unintell.]

5           MS. GAMBALE:  He was trying to seek with

6   the MDMR, whoever, he was trying to get assistance

7   for that, right now.  I mean, so, that's why we

8   think it would benefit him in that.  And he should

9   be entitled because they dropped the ball on this

10  one.  There was so much that they didn't provide.

11  And not only that, but we have express terms that

12  they were supposed to convene and they didn't do

13  it.

14          HEARING OFFICER RUFFIN:  It's all--

15          MS. RODI:  300.122(A)(31)  Once a student

16  has graduated, there is no denial of faith.

17          HEARING OFFICER RUFFIN:  Oh, I thought

18  that was--

19          MS. RODI:  No, once the student has--

20          HEARING OFFICER RUFFIN:  [unintell.]

21          MS. GAMBALE:  I have, what I have is a

22  full stack of case law that begs to differ.  I have

wtk                                                                    6

1    a copy for each.

2              HEARING OFFICER RUFFIN:  Case law that

3    says?

4              MS. GAMBALE:  Case law that basically says

5    a--

6              HEARING OFFICER RUFFIN:  [unintell.]

7              MS. GAMBALE:  Exactly.

8              MS. RODI:  This one says that--

9              MS. GAMBALE:  That the child should

10   be--for denials of faith that occurred prior to the

11   graduation, this child should be and it's clear.

12             HEARING OFFICER RUFFIN:  Are there any ELR

13   cases on any of these [unintell.]?

14             MR. HILL:  There are some--

15             MS. RODI:  These cases do not apply.  This

16   first case is about whether or not we can delay

17   graduation in order to provide faith.  That doesn't

18   apply.  This case is about doing transition

19   services, which is not applicable.  That--

20             MS. GAMBALE:  All these--

21             MS. RODI:  This is one is about how or

22   whether or not the Student had not completed his

wtk                                                                    7

1    IEP goals should be allowed to participate in his

2    graduation even though he was not ready to

3    graduate.   The Student has walked already.   We're

4    not talking about--

5           HEARING OFFICER RUFFIN:   When did they

6    file a Hearing Request?

7           MS. GAMBALE:   We filed the original

8    Hearing Request on the 12th of May.

9           MS. RODI:   But the Student still walked,

10   and if they had possession of this case and had a

11   relationship with the Student, then that should

12   have been somehow--his graduation should have been

13   halted.   That's something that they had control

14   over.   And the fact is the Student still went ahead

15   and walked and received a diploma.

16          MS. GAMBALE:   But see, the sad thing is,

17   we don't know, like, in terms of the diploma, since

18   the team never convened as they agreed to do, we

19   don't know that he's actually ever met his goals

20   and they just [unintell.]

21          HEARING OFFICER RUFFIN:   [unintell.]

22          MS. GAMBALE:   No, there was not.   At a

wtk                                                                        8

1   minimum, they should be meeting--

2          HEARING OFFICER RUFFIN:  So, what's your

3   position on whether he's complied or not--I know

4   your position on--

5          MS. RODI:  I don't know to what extent it

6   has been complied with, but it was--the Student

7   expressed desire to graduate.  So, in terms of

8   that--that was the intent that the Student has

9   declared all along, his intent to graduate.

10         HEARING OFFICER RUFFIN:  Well--

11         MS. RODI:  It wasn't that he just

12  issued--that they just issued a diploma.

13         HEARING OFFICER RUFFIN:  All right, but

14  going beyond your argument that all this--and the

15  case should be dismissed based upon his graduation.

16  If I don't accept that argument [unintell.]

17         MS. RODI:  The problem is that I--the

18  schools are not in session today, so I don't have a

19  witness today.  I would have to get a continuance

20  because I don't have a witness today to address

21  this.

22         HEARING OFFICER RUFFIN:  Because, at the

wtk                                                                    9

1   meeting, the comp-ed was supposed to be addressed.

2   So, I hear [unintell.] saying something about the

3   services [unintell.] time

4         MS. RODI:  But, I mean, he graduated.

5   He--he's 20 years old.  He made the decision to

6   graduate.

7         MR. HILL:  Mr. Ruffin, if I may be able to

8   say something, from having worked with Student the

9   last five years, first of all it's important to

10  note that at the settlement agreement, at that time

11  we were going to discuss DCPS said we were going to

12  make the trans--discuss the transfer of the

13  Student's rights from the Student--from the Parent

14  to the Student at the MDT/IEP meeting, recognizing

15  his age.

16        In this situation, the Student was

17  never--the MDT meeting was never held, nor were

18  there any attempts to hold the meeting.  So, the

19  right was still that of the Parents.  And,

20  unfortunately, in terms of those cases, those case

21  law--the cases in there do, specifically deal with

22  the issue that Ms. Rodi said about the Student

1  graduating.  All those cases deal with, in

2  particular, that in this situation, you cannot deny

3  a student the right to graduate because he is owed

4  compensatory education.  Those cases deal with when

5  the Student has been denied services by a school

6  district, whether or not the comp-ed claim dies.

7      All of those cases go--beyond reading of

8  the blurb--discussed that those school districts

9  are required to provide those students some form of

10  comp-ed.  And that's what we're saying here.

11      This Student in four years, only had two

12  IEPs, one where it was speech-and-language impaired

13  had developed, in 2001; there was none for the

14  2002/2003 school year; none for the 2003/2004, up

15  until the May meeting, at which time he went from

16  being speech-and-language impaired, getting eight

17  to ten hours a week, to all of a sudden being

18  ED/LD, getting 22.

19      HEARING OFFICER RUFFIN:  [unintell.]

20      Mr. HILL:  Yeah, it was May 4, 2004.

21      HEARING OFFICER RUFFIN:  Is that in here?

22      MR. HILL:  Yes, they're both in, the

1  Petitioner's Exhibit AGR-12 and AGR-13.

2            HEARING OFFICER RUFFIN:  Okay, moving

3  beyond that.  You're saying, even if I didn't

4  accept his argument, and you need a continuance

5  because you're not prepared to go forward

6  [unintell.]

7            MS. RODI:  Correct.

8            HEARING OFFICER RUFFIN:  Even with all

9  that, what are you seeking?

10            MS. GAMBALE:  Evals--

11            MR. HILL:  Are you asking me?

12            HEARING OFFICER RUFFIN:  Yeah.

13            MR. HILL:  No, I'm sorry, but if I may be

14  permitted to speak, Mr. Hearing Officer.  At this

15  time--

16            MS. RODI:  [unintell.]

17            MR. HILL:  --an MDT/IEP--I'm of counsel,

18  attorney with the law firm of James E. Brown and

19  Associates.

20            HEARING OFFICER RUFFIN:  I don't know why

21  you--I mean, you handled it very differently when

22  Mr. Lammers comes in here, he's the one who argues

1    and Ms. Gambale just sits on the side--

2                MS. RODI:  I just want to know how he's

3    here, unless he's here as an advocate.

4                HEARING OFFICER RUFFIN:  Ms. Neloms signed

5    on here, and so, whose case is it?

6                MR. HILL:  Well, it was, again, Ms. Neloms

7    couldn't be present for this one, she's at another

8    one.

9                HEARING OFFICER RUFFIN:  So, you're

10   standing in for Neloms?

11               MR. HILL:  No, I'm not standing for

12   anybody, I'm just of counsel, that's what I'm

13   saying?

14               HEARING OFFICER RUFFIN:  Oh, okay, well

15   whose case is it, Ms. Neloms?

16               MR. HILL:  No, this is, right, it's Ms.

17   Neloms' case, ultimately.

18               HEARING OFFICER RUFFIN:  You're not here

19   to speak for Ms. Neloms?

20               MR. HILL:  Right, right, right.  So the

21   only thing I'm in here is just of counsel.

22               HEARING OFFICER RUFFIN:  I got you, but

1    you're familiar with the Student?

2            MR. HILL:  Very familiar having worked

3    with him five years.  At this time, again, we're

4    asking for D.C. Public Schools to merely reconvene

5    the meeting to determine: one, if the Student still

6    requires those evaluations; because if he is not

7    entitled to go to college and he's going to need

8    assistance for some type of vocational training,

9    he's going to need that.  And, two, they still have

10   an obligation to provide this Student with his

11   services as comp-ed.  If they've done it, prove it

12   to us.  That's what they're saying and then there'd

13   be no harm no foul.  You know, they entered

14   something knowing--in February, the Student was on

15   track, supposedly to graduate.

16           HEARING OFFICER RUFFIN:  Mr. Hill

17   [unintell.] If, in essence [unintell.] violation of

18   settlement, that's contractual [unintell.]

19           MS. RODI:  Right, but the fact is that if

20   you can't--if the remedy can't be given, since the

21   Student has already--I mean, there's no denial of

22   faith, once a Student has graduated.  It's the--no

1  matter how you slice it, my argument, is going to

2  remain the same.  And the fact is that he's 20

3  years old and he's graduated and you're going to

4  bring him back for six hours--

5        HEARING OFFICER RUFFIN:  What's he doing

6  these days?

7        MR. HILL:  He's trying to go to college.

8        HEARING OFFICER RUFFIN:  Has he got some

9  applications in?

10       MR. HILL:  Yes, he's trying to go to UDC.

11       HEARING OFFICER RUFFIN:  Did he get into

12  UDC?

13       MR. HILL:  Right, no, he's enrolled--

14       HEARING OFFICER RUFFIN:  Rolling but not--

15       MR. HILL:  No, it's the same thing rolling

16  admission, that means when you put your application

17  in you can go in.  But even though he's going to

18  college that still doesn't mean that he's going to

19  be successful.  Because, again, he was supposed to

20  be getting all these services as an ED/LD student.

21  You tell me, UDC from the best of my knowledge

22  isn't--

1          HEARING OFFICER RUFFIN:  So, all he really

2    wanted is a meeting to determine whether or not the

3    evaluations need to be--

4          [Simultaneous conversation.]

5          MR. HILL:  What we're saying is, asking

6    them to look, no, I said have a meeting to one,

7    determine if the evaluations need to be done,

8    especially the vocational; and two, all those cases

9    that I gave you, again, squarely deal with people

10   that have gone to college--

11         HEARING OFFICER RUFFIN:  [unintell.]

12         MR. HILL:  He may need comp-ed for the

13   assistance to help him matriculate through college.

14         HEARING OFFICER RUFFIN:  But do you have a

15   desire for a certain amount of comp-ed?

16         MR. HILL:  Well, again, under "Reed"--

17         MS. GAMBALE:  We've asked for six hours,

18   is what we had asked for, per week.

19         HEARING OFFICER RUFFIN:  Six hours per

20   week for how long?

21         MS. GAMBALE:  For a duration of four years

22   to make up for what--and we went back to when the

1   IEP to the first IEP that was inappropriate.  But

2   the whole thing for the Student, the re-evaluations

3   would be very helpful to him at this point, because

4   we don't know where he is in terms of the goals and

5   objectives on his IEP.

6          We don't know what he's mastered; we don't

7   know what level--they never did the triennials, so

8   we don't know where he is and what kind of

9   assistance he might need, as he tries to--

10          HEARING OFFICER RUFFIN:  UDC doesn't take

11  an IEP.

12          MS. GAMBALE:  I know it doesn't, but at

13  least if we know where--

14          MS. RODI:  Unless they don't take

15  vocational assessments.  They don't take--

16          MS. GAMBALE:  Whether he's actually on--

17          MS. RODI:  --UDC doesn't need to know

18          [Simultaneous conversation.]

19          HEARING OFFICER RUFFIN:  If we were to go

20  forward, who would your witnesses be?

21          MS. RODI:  It would have to be--it would

22  be Ms. Sonya Lee, who is the SEC at--

wtk
17

1          HEARING OFFICER RUFFIN:  [unintell.]

2          MS. RODI:  --I actually, right now, just

3   Ms. Lee because all the--most of them are off on

4   break.

5          HEARING OFFICER RUFFIN:  Is Lee working

6   full-time?

7          MS. RODI:  Yes, but they're, everyone's

8   off for two days.  So--

9          HEARING OFFICER RUFFIN:  Did you were you

10  able to confer with her at all?

11         MS. RODI:  I was able to confer with her

12  only on the graduation part.  And then, so I

13  honestly don't know what has been done.

14         HEARING OFFICER RUFFIN:  Well, this is

15  what I'll do, I've got to basically take the

16  argument under advisement.  And basically based on

17  what determination I make, after having read all

18  these cases, if I don't accept DCPS's argument,

19  then the case needs to be reset.  Because, I mean,

20  I'm not ready to rule on this at the moment, I've

21  got to do some more research and she's asked for a

22  continued hearing.  So, and I don't think that--it

1  doesn't sound like [unintell.] the Student's going

2  to be--

3          MS. RODI:  The man--

4          HEARING OFFICER RUFFIN:  The graduate is

5  going to be harmed by this being delayed for

6  whatever time it's being delayed for me to make my

7  decision, which I continuance do.  Then if it has

8  to get back on the calendar, we can determine that.

9  But, I mean, the reality is, I mean, even if you

10  got what you want and you want a meeting.  A

11  meeting not's going to help you.  Who is going to

12  be in the meeting?

13          MS. GAMBALE:  Well, why would he not be--

14          MR. HILL:  Why would they not--I mean, I

15  think that's part of the, I mean, again, not to get

16  on the soapbox, but I think that's part of the

17  problem with D.C., we can't expect them not to

18  follow-through on some things. They've been given

19  in the past, all due respect, Ms. Rodi and Mr. Ruff

20  [sic] for the last four years on this kid, you have

21  an IEP one year; all of a sudden you do no

22  evaluations, he's ED/LD three years later.

wtk                                                                            19

1          HEARING OFFICER RUFFIN:  Oh, his

2   classification was changed?

3          MR. HILL:  Right he was looking, like I

4   said, look at the date of the evals and--

5          HEARING OFFICER RUFFIN:  The evals are

6   what's being requested.

7          MS. GAMBALE:  He's asked for the psycho-ed

8   and the clinical.  And just to get a take on where

9   he is--

10          HEARING OFFICER RUFFIN:  Because he was

11   made ED without a clinical.

12          MR. HILL:  He was made E--he had a

13   psychiatric eval, 5/11/01, a psychological 5/23/01.

14   Again, those were done post--and there was a IEP

15   meeting done in March 26,'01.  So, the meeting--the

16   IEP meeting in March, there was some evaluations

17   that were done prior to and post the date of the

18   3/26 meeting.  All right, the meeting was never

19   reconvened in '01, '02, '03, not till 5/4/04.  And

20   again, then he was ED/LD?

21          HEARING OFFICER RUFFIN:  He became ED/LD.

22   Right, in '04, 5/4/'04.

wtk                                                                    20

1              HEARING OFFICER RUFFIN:  Did the

2    psychiatrics recommend ED from the diagnosis--

3              MR. HILL:  Your indulgence, I'm sorry.

4              MS. GAMBALE:  Well, if--

5              MS. RODI:  Again, objecting to--

6              MR. HILL:  Oh, I'm sorry, I won't say

7    anything else as--

8              MS. RODI:  [unintell.]--as an attorney

9    here.  If he's a witness that's fine, but not and

10   not making arguments.  I'm fine if he's giving

11   information.

12             MS. GAMBALE:  What the psychiatric is in

13   our Exhibit No. 10, what it recommended was that he

14   be diagnosed with a disruptive behavior disorder

15   and that he be enrolled in a special-education

16   placement--it did recommend it.  And it also

17   recommended a placement which he never got because

18   they never convened.

19             HEARING OFFICER RUFFIN:  But that was in

20   '01, and he stayed, was he at Wilson the whole

21   time?

22             MS. GAMBALE:  He was at Wilson the whole

wtk                                                                    21

1    time.

2              HEARING OFFICER RUFFIN:  Wilson doesn't

3    have ED, or it does.

4              MS. RODI:  Yeah, it has an ED.

5              MS. GAMBALE:  The thing is that so much

6    time has gone by without him being tested that we

7    don't know where he is right now.

8              HEARING OFFICER RUFFIN:  He's in college.

9    He's graduated, he has a diploma, that's where he

10   is.

11             MS. GAMBALE:  He would like to be in

12   college, he'd like to go on; he's been talking

13   about this since '04, at the meeting where they

14   asked for them to do vocational and they asked for

15   them to give him the assistance in getting there.

16             HEARING OFFICER RUFFIN:  Who was the last

17   person who contacted the school Unintelligible]--

18             MR. HILL:  The mother came in last week,

19   with Angelo.

20             HEARING OFFICER RUFFIN:  With him?

21             MR. HILL:  Yeah.

22             MS. GAMBALE:  And, so, we don't know, we

wtk                                                                 22

1   want to give him the tools that he's going to need

2   to be able to go to college; to be able to succeed,

3   which he hasn't gotten so far.

4          MS. RODI:   I don't know how a clinical or

5   any of these things are going to help a student go

6   to college.   They cannot--you don't get an IEP.   If

7   he needs psychological counseling or anything like

8   that when he's in college, that's something that's

9   on his own.   He's a man, now and he's a man with a

10  high school diploma.   And, therefore, any

11  obligation of faith has gone away.

12         HEARING OFFICER RUFFIN:   That's it,

13  anything else?

14         MS. RODI:   Nope.

15         HEARING OFFICER RUFFIN:   All right, thank

16  you for the homework.

17         [Whereupon, the hearing was concluded.]

18                        -  -  -

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666