# EXHIBIT 27

wtk                                                                    1

T6896                GOVERNMENT OF THE DISTRICT OF COLUMBIA

                        DEPARTMENT OF PUBLIC SCHOOLS

                        OFFICE OF STUDENT HEARINGS

- - - - - - - - - - - - x
                          :
In the Matter of:         :
                          :
ANGELO RIVAS-GREGORY      :
                          :
- - - - - - - - - - - - x

                              Washington, D.C.

                              Friday, December 1, 2005

            The above-entitled matter came on for

hearing, pursuant to notice.

BEFORE:

            TERRY BANKS, Hearing Officer

APPEARANCES:

        On Behalf of the Student/Parent:

            MARSHALL LAMMERS, ESQ.

        On Behalf of D.C. Public Schools:

            CATHERINE RODI, ESQ.

        [TRANSCRIPT PREPARED FROM A TAPE RECORDING.]

                    MILLER REPORTING CO., INC.
                      735 8th STREET, S.E.
                  WASHINGTON, D.C. 20003-2802
                        (202) 546-6666

wtk                                                                          2

# C O N T E N T S

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---------|--------|-------|----------|---------|
| Kevin Carter | 21 | 32 | 42 | 44 |
| Ms. Sonia Lee | 47 | 52 | 61 | |
| Angelo Rivas-Gregory | 65 | 70 | 76 | |

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

wtk                                                                      3

1                    P R O C E E D I N G S

2            HEARING OFFICER BANKS: Good morning.

3            MS. PRIMES:  Good morning.

4            HEARING OFFICER BANKS:  Today is Dec 1,

5    2005, this is an Administrative Hearing for Angelo

6    Rivas-Gregory.

7            This hearing is being conducted in

8    accordance with the guidelines and rights

9    established by the Individuals With Disabilities

10   Education Improvement Act of 2004; the Rules of the

11   Board of Education for the District of Columbia and

12   D.C. Code Title 38.  My name is Terry Banks.  As an

13   independent Hearing Officer, I am not an employee

14   of the D.C. Public Schools.  I am not related to,

15   or an acquaintance of the Student of Parent.  I am

16   prepared to hear both parties and will act only on

17   the evidence presented during the course of this

18   hearing, in accordance with applicable laws, rules,

19   and regulations.

20           This hearing is closed to the public, the

21   matters discussed here today are confidential and

22   must be treated as such, even after the hearing is

wtk                                                                    4

1   completed.  The hearing is being recorded and

2   either party may request a copy of the disc or a

3   written transcript of the proceedings by writing to

4   the Student Hearing Office.

5            At this time, I would like for everyone to

6   identify themselves for the record.

7            MS. RODI: Catherine Rodi, Attorney Advisor

8   to D.C. Public Schools.

9            MS. LAMMERS:  Catherine Rodi, attorney for

10  the Student.

11           MS. CARTER:  Good afternoon, Kevin Carter,

12  educational advocate.

13           MR. Hill:  Mike Hill, James E. Brown and

14  Associates practicing pursuant to [unintell.]

15           HEARING OFFICER BANKS:  Good afternoon.

16  Mr. Lammers, do you waive a reading of the hearing

17  rights?

18           MR. LAMMERS:  Yeah we waive a formal

19  reading of the rights today.

20           HEARING OFFICER BANKS:  Both parties have

21  supported five-day disclosure statements.  Does

22  either party object to the introduction of the

wtk                                                                         5

1    other party's statement of the evidence?

2              MS. RODI:  No objections.

3              MR. LAMMERS:  I do have one objection.

4    The disclosure received November 23, contains MDT

5    or meeting notes from November 22, '05, they

6    weren't actually attached to the disclosure we

7    received; it was only three pages.  We're not aware

8    of any meeting actually taking place on the 22nd,

9    so we would ask that or any reference to it not be

10   admitted.

11             MS. RODI:  Well, the meeting was supposed

12   to take place on the 22nd; it was canceled and

13   rescheduled and--x But you disclosed the notes that

14   he hasn't seen.

15             MS. RODI:  They were--no, because the

16   meeting happened yesterday.  Mr. Carter was at that

17   meeting.  So, but they were--the meeting was

18   supposed to occur, it did not occur, it was

19   canceled by Mr. Carter and by their client and,

20   subsequently, a meeting did not happen again until

21   yesterday.

22             HEARING OFFICER BANKS:  So, a meeting took

wtk                                                                          6

1    place yesterday?

2              MS. RODI:  Yes.

3              HEARING OFFICER BANKS:  So, what's your

4    position?

5              MR. LAMMERS:  Well, I do have notes from

6    the meeting that took place yesterday, I haven't

7    seen whatever copy DCPS would be admitting at this

8    time, so I'd want to confirm that there weren't

9    additional information or things that I didn't have

10   in the copy that I've been provided.

11             HEARING OFFICER BANKS:  So, what do you

12   want to do?

13             MR. LAMMERS:  I concede what she has.

14             MS. RODI:  There are notes, Mr. Carter--

15             HEARING OFFICER BANKS:  Only you didn't

16   provide them to him?  Did you not provide them to

17   him?

18             MS. RODI:  No, the meeting was last night.

19             HEARING OFFICER BANKS:  Your fax machine

20   doesn't work?

21             MS. RODI:  I didn't--it was after I left.

22   But there are nothing different and I know Mr.

wtk                                                                              7

1    Carter was given a copy an that was, actually, I

2    asked Ms. Lee [ph] what you had been given a copy

3    of.

4              MR. LAMMERS:  That seems to be everything

5    that I have.  For simplicity's sake, I won't object

6    to that being admitted.  I would point out that

7    within our own disclosures, Exhibit 15, employees

8    erroneously included, it's actually for a different

9    student, so if you could take that out of your

10   disclosure, that won't be something that we're

11   proffering today and it's not related to the

12   Student.

13             HEARING OFFICER BANKS:  That it?

14             MR. LAMMERS:  Thank you very much.

15             HEARING OFFICER BANKS:  Both sets of

16   five-day disclosures admitted, including

17   DCPS's--what did I do with yours?  There it is.

18   Any other preliminary matters?

19             MS. RODI:  Yes, we had compelled the

20   Student and he isn't here.

21             MR. LAMMERS:  The Student is available by

22   phone, which is also how he participated in the

wtk                                                                    8

1   last hearing where his presence was required.  And

2   the note or Motion to Compel, we received

3   separately, but the disclosures don't actually list

4   him as a witness, so it would be my contention that

5   Ms. Rodi wouldn't be allowed to question him,

6   except on cross after I called him.

7           HEARING OFFICER BANKS:  Where is the

8   Motion to Compel?

9           MS. RODI:  It's attached to my disclosure,

10  it's the second-to-last page.

11          HEARING OFFICER BANKS:  Oh.  If it's not

12  it, it's the one at the other end.

13          MR. LAMMERS:  I mean, I've spoken to the

14  Student within the last half hour, he is available

15  as a witness to participate by phone.  So, one way

16  or another he can be present today.  But I'd object

17  to Ms. Rodi calling him as a primary witness when

18  he's not listed as a witness in her disclosure.

19          MS. RODI:  We--first of all, we have said

20  that we reserve the right to examine any witnesses

21  called or identified as potential witnesses.

22          HEARING OFFICER BANKS:  She did, she did

1  file a Motion to Compel and she put you on notice,

2  so I think that's sufficient.  Anything else?

3          MS. RODI:  I would object to his presence,

4  for him not being here.

5          HEARING OFFICER BANKS:  Well, if DC's

6  never going to call another witness by phone, I'll

7  accept that objection, but--

8          MS. RODI:  Well, we, it's--it would be one

9  thing if he--

10          HEARING OFFICER BANKS:  It only means to

11  be available to testify.

12          MS. RODI:  Fine.

13          HEARING OFFICER BANKS:  You want him here?

14          MS. RODI:  Well, the fact that he's a

15  19-year-old student--

16          HEARING OFFICER BANKS:  Well, he's a

17  student.

18          MS. RODI:  --right, at D.C. University of

19  District of Columbia.  And he has graduated.

20          HEARING OFFICER BANKS:  What's your point?

21          MS. RODI:  My point is that--

22          HEARING OFFICER BANKS:  Your point is to

wtk                                                                    10

1   have him available to testify, now, if D.C. thinks

2   it's important for witnesses to be present, then we

3   can enforce that uniformly.  Mr. Lammers, would you

4   like to open?

5            MR. LAMMERS:  I would, I do have one last

6   preliminary issue, though, Mr. Banks.  We have not

7   received a written response to the Complaint from

8   DCPS.  I know that's been back and forth.  I think

9   "Massey's" [ph] made it more clear, though, that

10  there's no way of substituting the obligations of

11  that written response.

12           HEARING OFFICER BANKS:  May I see?

13           MR. LAMMERS:  "Warner Massey versus

14  District of Columbia," it was a memorandum opinion

15  issued by the District Court on November 3, stating

16  that, essentially, the response is required by

17  DCPS, they're not allowed to substitute other forms

18  of the response that are required under the

19  procedural requirements of IDEA.

20           HEARING OFFICER BANKS:  Did you file a

21  Motion for--

22           MR. LAMMERS:  I have not filed a previous

wtk                                                                    11

1   Motion.  So, I'm making that Motion--

2              HEARING OFFICER BANKS:  What is it with

3   you people?  You walk in here on the day of the

4   hearing, you've got disclosures that were done the

5   day before.  Now you want me to determine the case

6   the first time I hear about it is at the hearing?

7              MR. LAMMERS:  I'm just putting it on the

8   Record as--

9              HEARING OFFICER BANKS:  There's a form

10  known a Motion to--Motion for Default Judgment,

11  should be filed sometime before I convene a

12  hearing.

13             MR. LAMMERS:  Understood, Mr. Banks.

14             HEARING OFFICER BANKS:  Was there a

15  Resolution Meeting?

16             MR. LAMMERS:  No, no Resolution Meeting

17  was scheduled by DCPS.

18             MS. RODI:  We did the MDT meeting, not in

19  lieu of--

20             HEARING OFFICER BANKS:  I'll tell you

21  what, Mr. Lammers, my practice has been where DCPS

22  doesn't file a response and doesn't convene a

wtk

1  Resolution Meeting through no fault of the

2  Petitioner, I have granted Motions for Default

3  Judgment.  Since you didn't file one before the

4  hearing began, I'm going to take your Motion under

5  advisement.

6         MR. LAMMERS:  Understood, Mr. Banks.

7         HEARING OFFICER BANKS:  Would you like to

8  open?

9         HEARING OFFICER BANKS:  Angelo

10  Rivas-Gregory was a student at Wilson Senior High

11  School.  He has graduated, as Ms. Rodi has pointed

12  out.  He's attending UDC, where he's having

13  significant problems taking classes as a

14  college-level student.

15         There was a previous--

16         HEARING OFFICER BANKS:  Wait a minute,

17  let's start--let's start this over.

18         MR. LAMMERS:  Sure.

19         HEARING OFFICER BANKS:  He was at Wilson?

20         MR. LAMMERS:  He was at Wilson.

21         HEARING OFFICER BANKS:  And then what

22  happened?

wtk                                                                    13

1              MR. LAMMERS:  He graduated from Wilson in

2    June, while we still had issues of services not

3    being delivered being raised through complaints and

4    settlement agreements and I will be able to offer

5    witness testimony today from Mr. Carter from Angelo

6    indicating the harm that he's received from this

7    lack of services and what problems he's having

8    right now trying to move on with his education.

9              HEARING OFFICER BANKS:  Go ahead.

10             MR. LAMMERS:  DCPS was ordered to--

11             HEARING OFFICER BANKS:  So, he's actually

12   attending UDC [unintell.]

13             MR. LAMMERS:  He's attending UDC at this

14   time, taking remedial classes there.  There was an

15   Order issued on August 30, requiring an MDT meeting

16   be convened within 30 days to determine the amount

17   of compensatory education that Angelo was supposed

18   to receive and to develop a plan.  That meeting was

19   not convened within the 30 days.  There is a long

20   list of letters from Mr. Hill attempting to get

21   that meeting scheduled.  The meeting was not

22   ultimately held until yesterday.

wtk                                                                    14

1          And at that meeting, despite the fact that

2    DCPS representatives admitted that there have not

3    been services provided to Angelo for a very long

4    period of time, required under his IEP, they were

5    still not willing to give him any compensatory

6    education whatsoever.

7          So, our issues today are the failure to

8    comply with that August 30, HOD; failure to provide

9    the Student with specialized instructions and

10   related services; and we're asking for, either a

11   meeting to be convened within five days with some

12   specific Order instruction given to the team that

13   they must provide compensatory education that would

14   include, at a bare minimum, a laptop computer and

15   appropriate software to prepare Angelo for his

16   college courses.  And tutorial services of

17   compensatory education to enable him to pass

18   his--the remedial classes, which, if he can't, he

19   will not be allowed to take any college courses at

20   UDC.

21         If they don't convene that meeting within

22   five days--and I'm asking this because we've had

1    the past three months trying to get this meeting

2    done in the first place--we would ask that he just

3    be issued, as compensatory education automatically,

4    a laptop computer; appropriate educational

5    software, which would include, at a minimum,

6    Windows XP, Office XP, Microsoft Student 2006; and

7    that he receive 2,000 hours of tutorial services.

8            Today, I'm prepared to call Mr. Hill and

9    Mr. Carter, both who can give testimony as to the

10   meeting that was convened yesterday; the steps that

11   have been taken to try to secure compensatory

12   education through the required HOD meeting and it's

13   violation.  Also to be able to call Angelo to

14   discuss some of the problems--the specific and

15   immediate academic harm that he's suffering with

16   now, as a failure of DCPS to provide him  his

17   specialized instruction and related services over

18   the past three school years.

19           HEARING OFFICER BANKS:  I want to go off

20   the record.

21           [Break.]

22           HEARING OFFICER BANKS:  Ms. Rodi?

1          MS. RODI:  DCPS was ordered in the last

2    HOD to convene a meeting to determine--to discuss

3    compensatory education and determine what, if

4    anything Student was owed.  The team met and they

5    determined that the Student was occupational

6    therapy owed any compensatory education.

7          The notes are very extensive.  They--there

8    was nothing that said, in the last HOD that we had

9    to do anything more than to meet to discuss

10   compensatory education.  All the other issues had

11   already been adjudicated.

12         And the notes are extremely extensive that

13   talks about how the Student didn't avail himself of

14   education at times; that he--and I have Ms. Lee to

15   testify to the services that he did not avail

16   himself of, that he was not interested in receiving

17   some of his related services and that--and his

18   report card, which was also reviewed at the

19   meeting, also shows that, when he attended classes

20   at other schools that he did receive passing grades

21   and subsequently got a diploma.

22         And it was, therefore, DCPS's conclusion

wtk                                                                    17

1   that there was no compensatory education that was

2   needed to give to the Student.  And, today, we will

3   have Ms. Lee testify to what happened to the

4   meeting yesterday and that this meeting

5   subsequently met the requirements under the last

6   HOD to have the meeting, to have the discussion,

7   and to determine whether or not the Student needed

8   compensatory education.

9            HEARING OFFICER BANKS:  Do you have a

10  witness?

11           MS. RODI:  Yes.

12           [Phone call placed.]

13           HEARING OFFICER BANKS:  Who is this

14  witness?

15           MS. RODI:  Ms. Lee, Sonia Lee [ph], SEC.

16  DCPS will have to rely on the documents in the

17  Record.

18           HEARING OFFICER BANKS:  No other witness?

19           MS. RODI:  The witness is--

20           HEARING OFFICER BANKS:  No, I'm speaking,

21  you have no other witness?

22           MS. RODI:  I have no other witness.

1        HEARING OFFICER BANKS:  So, you're not

2   calling the Student?

3        MS. RODI:  What's that?

4        HEARING OFFICER BANKS:  You're not calling

5   the Student?

6        MS. RODI:  No, the Student, not at this

7   time.

8        HEARING OFFICER BANKS:  Mr. Lammers, do

9   you have a witness?

10        MR. LAMMERS:  Yes, the first witness I'd

11   like to call is Mr. Kevin Carter, please.

12        HEARING OFFICER BANKS:  What are we going

13   to establish on your side?

14        MR. LAMMERS:  We're going to establish

15   that Mr. Carter attended this meeting, yesterday,

16   where he met with Ms. Lee; where Ms. Lee and other

17   members indicated through service logs, class

18   schedules, and discussions which are now in the

19   notes that Ms. Rodi has submitted, that Angelo has

20   been denied his special-education services.  His

21   IEP has not been implemented and, basically, in the

22   entire last advisory, he was forced to choose

wtk                                                                          19

1    between whether or not he wanted to graduate or

2    whether he was--

3              HEARING OFFICER BANKS:  Okay, here's what

4    I need to know:  Let's assume you prove all that

5    and there's a violation of the previous HOD, which

6    is why we're here.  How are you going to show how

7    much comp-ed he's entitled to?

8              MR. LAMMERS:  We can show by a cross

9    between the amount of services denied, the actual

10   violations--the elements of the violation compared

11   to the harm that he is now facing at UDC, which Mr.

12   Carter has dealt with Angelo.  And Angelo will be

13   called afterwards to talk about the specific--

14             HEARING OFFICER BANKS:  All the harm that

15   he's facing at UDC now, is as a result of the

16   violation of the hearing--HOD in June?

17             MR. LAMMERS:  This is one way of showing

18   some of the harm that has been the result of

19   failure to implement the IEP, which led to the

20   HOD--

21             HEARING OFFICER BANKS:  No, what we're

22   here to deal with is a violation of the last HOD.

1              MR. LAMMERS:  Yes, Mm-hmm.

2              HEARING OFFICER BANKS:  The comp-ed that

3    I'm entitled to award is on the basis of the

4    violation of that HOD.

5              MR. LAMMERS:  Right.

6              HEARING OFFICER BANKS:  So, what you're

7    got to show is the loss that he sustained as a

8    result of the violation of that HOD and the type of

9    comp-ed that would compensate him for that loss.

10             MR. LAMMERS:  Understood, but that HOD is

11   dealing with services that weren't provided--we

12   simultaneously--

13             HEARING OFFICER BANKS:  Okay, that HOD--I

14   don't care, that HOD--I don't care.  That HOD was

15   an incorporation of a settlement agreement.  What

16   I'm here today for is a violation of that HOD.

17             MR. LAMMERS:  Actually it's for two

18   issues, we've plead two separate issues in this

19   Complaint.  One is the violation of the HOD; and

20   two is the failure to provide those services over

21   the last school years.

22             HEARING OFFICER BANKS:  There still has to

21

1   be a showing--I'll tell you what, you put your

2   witness on.

3           Whereupon,

4                       KEVIN CARTER

5   was called as a witness and, having been first duly

6   sworn by the Hearing Officer was examined and

7   testified as follows:

8           HEARING OFFICER BANKS:  go ahead, Mr.

9   Lammers.

10                  DIRECT EXAMINATION

11          BY MR. LAMMERS:

12      Q    Could I have your full name for the

13  Record, Mr. Carter?

14      A    Yes, my name is Kevin Carter, C-a-r-t-e-r.

15      Q    And your current position?

16      A    I'm an educational advocate with James E.

17  Brown and Associates.

18      Q    How long have you been with that

19  organization?

20      A    A total of three years.

21      Q    Could I have you background

22  certifications, degrees that qualify you for your

wtk                                                                    22

1   current position?

2       A    Sure, I have a bachelor's degree in

3   psychology and social sociology; a master's degree

4   in counseling in mental health and a National

5   Counselor's certification.

6       Q    Are you familiar with Angelo

7   Rivas-Gregory?

8       A    Yes, I am.

9       Q    Have you reviewed any evaluations that

10  were included in this disclosure?

11      A    Yes, I reviewed a psycho-educational

12  assessment that was done several years ago.

13      Q    When was that evaluation conducted or what

14  year was that evaluation provided?

15      A    I believe that was conducted in 2001, I

16  don't have it in front of me.

17      Q    For clarity, that's been disclosed as

18  Exhibit 18.  Has he received any psycho-educational

19  evaluations that you are aware of, since that time?

20      A    Not to my knowledge.

21           HEARING OFFICER BANKS:  Does the HOD in

22  June require a psycho-ed?

1          MR. LAMMERS:  This is going to establish

2    harm.

3          HEARING OFFICER BANKS:  No, I'm not--we're

4    not re-litigating stuff.  What--did the HOD in June

5    require an updated triennial?

6          MR. LAMMERS:  No, it did not.

7          HEARING OFFICER BANKS:  Well, let's move

8    on.

9          MR. LAMMERS:  All right.

10          BY MR. LAMMERS:

11     Q    Can we assess any grade-level assessments

12   from that evaluation?

13     A    To my knowledge, there were not any

14   grade-level designations in that psycho-educational

15   assessment.

16          HEARING OFFICER BANKS:  Do you mean in a

17   four-year-old--

18          MR. LAMMERS:  The four-year-old, I'm

19   asking to determine, basically, what the damage has

20   been--what--

21          HEARING OFFICER BANKS:  Well, it's not my

22   fault that you don't have a Record to make that--I

wtk                                                                           24

1    mean, there are ways that you could make this

2    showing, but not with a 2001 psycho-ed.

3          MR. LAMMERS:  I have additional things

4    that I'm--I just want to make sure that we've got

5    the full thing on the Record.

6          HEARING OFFICER BANKS:  Okay, there's a

7    2001 psycho-ed, that's overdue.

8          BY MR. LAMMERS:

9    Q    Have you reviewed his last IEP?

10   A    Yes, I have.

11   Q    What was the date of that IEP?

12   A    That was dated 2000, well I don't want to

13   misstate it, but it was in the Record.

14   Q    Well, I can show you Exhibit 22, if you

15   can identify if this is the Student's IEP?

16   A    Correct, May 4 of '04.

17   Q    Is this the last IEP you're aware of?

18   A    That's the last one I'm aware of.

19   Q    Can you tell me what present levels were

20   given for Angelo at that time in his academic

21   areas?

22   A    I rem written expression was a relative

wtk                                                                    25

1    spread, but I think that was a 10th grade, second

2    level; designation of reading comprehension was a

3    deficit area; again, I don't want to misstate it,

4    I'd prefer to look exactly at it, but I recall it

5    being fourth or fifth grade.

6        Q    Can you confirm that this Page 2, which is

7    included, actually, at the fourth or fifth page in

8    Exhibit 22 of this disclosure is the Page 2 that

9    establishes the present levels?

10       A    That's correct.

11       Q    Can you tell me what the present levels of

12   the math calculation and math reasoning were?

13       A    Right.  Math calculations was fifth grade

14   eighth month.  Math reasoning was fifth grade,

15   fourth month.  And reading comprehension to be

16   exact was fourth grade, fourth month.

17       Q    Thank you.  How many hours were required

18   of specialized instruction for Angelo, based on

19   that IEP?

20           MS. RODI:  Objection, we've gone through

21   all of this already.

22           HEARING OFFICER BANKS:  No, let him go.

wtk                                                                    26

1    Go ahead.

2            THE WITNESS:   Twenty-two and a half hours,

3    weekly.

4            BY MR. LAMMERS:

5    Q    Have you received any service logs or

6    encounter tracking forms from DCPS that indicate

7    that Angelo has received any of those specialized

8    instruction over the past two or three school

9    years?

10   A    I have not.

11   Q    Did you attend any MDT meeting for Angela,

12   I'm sorry, for Angelo on November 30?

13   A    Yes, I did.

14   Q    Can you tell me what happened at that

15   meeting?

16   A    Right, the focus of the meeting was to

17   engage in discussion about whether the Student was

18   entitled to compensatory education and the basis

19   for doing that was review of the IEP that we

20   just--that you just referenced.

21   Q    Why was that meeting being convened?   What

22   was the impetus behind it?

1        A    Well, primary purpose for having that

2   meeting, was the fact that this year Angelo is

3   having enormous difficulty at UDC, he's enrolled in

4   three remedial courses, was unable to take the

5   courses he would have taken as a true freshman,

6   because he could not pass the entrance exam.  And

7   because he's currently struggling in remedial

8   courses, his status as an enrollee at the

9   university is in jeopardy.  He will not be able to

10  take freshman courses until he passes the remedial

11  courses.

12       Q    Was there an Order requiring that

13  compensatory education be calculated?

14       A    At that meeting?

15       Q    Right, was this meeting in response to an

16  Order?

17       A    Yes, it was.

18       Q    That Order has been included as Exhibit 5

19  in the disclosures.  Have you seen this Order,

20  which I'm now showing Mr. Carter?

21       A    I have not seen it.

22       Q    Can you read section 1

wtk                                                                     28

1              HEARING OFFICER BANKS:  It speaks for

2    itself.

3        Q    Well, then to clarify the meeting was to

4    discuss and determine the amount of compensatory

5    education due and develop a compensatory education

6    plan.  Why wasn't this meeting held within 30 days?

7        A    Ms. Lee, the special education coordinator

8    at Wilson, insisted that the meeting could not go

9    forward if the Student were not physically present.

10   We had talked about--we had tentatively scheduled a

11   previous date and I had inquired about whether or

12   not the Student could participate by phone, but Ms.

13   Lee advised me, because of the Student's age, that

14   it was imperative that he be present at the meeting

15   in order for it to go forward.

16       Q    Were any of these meetings or this initial

17   attempt scheduled within the 30 days the Order

18   required?

19       A    No, they were outside of the date.

20       Q    Was Ms. Lee aware at anytime that your

21   firm wanted service logs, something to indicate

22   what services that he'd been receiving over the

1  past two or three years?

2     A    I know I had expressed that in at least

3  one of our conversations and it's my understanding

4  that a letter had been forwarded from our firm

5  requesting those documents, as well.

6     Q    Did you have any service logs prior to the

7  meeting yesterday?

8     A    I did not.

9     Q    Once you received some service logs, did

10  any of them indicate that he had been receiving

11  specialized instruction per his IEP over the past

12  few years?

13     A    No, it didn't.

14        HEARING OFFICER BANKS:  I'm sorry, I think

15  I've--you're saying that Ms. Lee refused to go

16  forward with a meeting without Petitioner?

17        MR. LAMMERS:  This was an initial meeting,

18  this wasn't the meeting yesterday.

19        HEARING OFFICER BANKS:  Right, and when

20  was that?

21        MS. RODI:  I believe that had originally

22  tried to be a Resolution Meeting.

wtk                                                                        30

1           BY MR. LAMMERS:

2       Q    You received no scheduling for a

3   Resolution Meeting?

4       A    I'm sorry, November 7.

5           HEARING OFFICER BANKS:  So, is there an

6   Exhibit relating to that?

7           MR. LAMMERS:  There is an exhibit 18,

8   which memorializes the conversation that took--I'm

9   sorry in Exhibit 17, which memorializes the

10  conversation Mr. Carter had on the 17th, when he

11  attempted to have this meeting at Wilson with Ms.

12  Lee.  And why she refused to convene the meeting,

13  even though the Student was available.

14          HEARING OFFICER BANKS:  All right, go

15  ahead.

16          BY MR. LAMMERS:

17      Q    Earlier it was commented that there was a

18  meeting scheduled for the 22nd, do you remember any

19  meeting being scheduled with your for November 22?

20      A    I don't remember any meeting being

21  scheduled.  Ms. Lee had talked about that date as a

22  tentative date, but, again, her insistence was

wtk

1    that, in order for the Student--in order for the

2    meeting to go forward, the Student would have to be

3    present physically.  And at the time of that

4    conversation, I indicated I had not been successful

5    in establishing phone contact with the Student.

6        Q    What was shared with you at the meeting,

7    outside of the service logs available as far as

8    what specialized instruction Angelo has received

9    over the last three years, per his IEP?

10       A    Well, the questions I had pertained to,

11   first of all, whether or not the instructors he was

12   assigned to were duly certified.  And Ms. Lee

13   attempted to inform me about those instructors that

14   she knew personally as she just recently assumed

15   the position of coordinator, herself.  So, she was

16   not able to answer my inquiry about the

17   certification about some of the instructors.  And

18   the other concern I had pertained to those offers

19   in which it was clear by Ms. Lee and by the

20   Student's testimony that the instructors were not

21   duly certified, they were regular-education

22   teachers and my questioning there had to do with

1  how could the Student have received specialized

2  instruction.

3         The third concern had to do with Ms. Lee's

4  admission that during the last advisory, the

5  2004/2005 school year, the Student only received

6  specialized instruction in a world government

7  course and that the Student had been put in the

8  situation with respect to amassing credits such

9  that his course schedule was stacked with elective

10 courses and Wilson could not provide him with

11 specialized instruction, except in world

12 government.  And the concern I expressed had to do

13 with the IEP being a legal document and intractable

14 in the sense that the school was obligated to

15 provide specialized instruction unless the team

16 assembled and decided to amend the number of

17 specialized-instruction hours.

18    Q    So, if I understand correctly, then, in

19 the fourth advisory, alone, only one class was

20 offered to Angelo that had any specialized

21 instruction?

22    A    That's correct, according to Ms. Lee.

1      Q    And that class was world government.  How

2   many hours would that have accounted to, even if he

3   received all those specialized-instruction hours?

4      A    That would have been from March 24 through

5   the end of the school year, which Ms. Lee said into

6   June 7.  So, minus the spring break, we're looking

7   at about ten weeks and four and a half hours of

8   instructional time per week.

9      Q    So, at best, out of all the specialized-

10  instruction services he should have been given,

11  based on his schedule, he only could have received

12  44 hours?

13     A    Right.

14     Q    At a maximum?

15     A    Correct.

16     Q    Was there any discussion at this meeting

17  about his English class or English 2, in

18  particular?

19     A    There was, Ms. Lee was forthright and

20  acknowledged the fact that Angelo's instructor in

21  his English 2 course, which he took during the

22  2002/2003 school year was a regular-education

34

1    instructor, not duly certified.  And, again, she

2    acknowledged it--she conceded that he did not

3    receive the specialized instruction in that course

4    for the entire year.  Subsequently, ended up

5    receiving an F in the course and had to go outside

6    to the Roosevelt Stay program to retake it in order

7    to be in a position to graduate.

8        Q    But his English or, I'm sorry, his reading

9    skills were still listed in that IEP as being in a

10   sixth-grade level, I believe.

11       A    Fourth-grade level, actually, reading

12   comp, I think was 4.4.

13       Q    Four-point-four, thank you.  Now, so,

14   basically, at this meeting, they clarified that he

15   didn't receive any specialized-instruction except,

16   possibly, this one class integrated he fourth

17   advisory.  They did share with you that he didn't

18   have any specialized instruction for this English 2

19   class, one of the areas that he has weaknesses?

20       A    Correct.

21       Q    Were they able to provide you and, once

22   again, any service logs that indicated during other

1  advisories that he had been receiving the

2  specialized instruction he was supposed to have in

3  the IEP?

4      A    They were not able to provide those

5  service logs.

6      Q    Did the team agree, since we have--with no

7  service logs, thousands now of hours missed or not

8  confirmed--did the team agree on any amount of

9  compensatory education that they were willing to

10  provide?

11     A    No, the team disagreed.  I--and the

12  Student disagreed with Ms. Lee and Miss Linear

13  [ph], one of the instructors in attendance that he

14  was not entitled to compensatory-education hours,

15  based upon their claims.  And we kind of rehashed

16  the information that they had provided us with on,

17  at least three occasions.  And we still disagreed

18  about that.

19     Q    They didn't provide you anything that

20  indicated the IEP had been amended, that the

21  Student had signed or anyone had signed anything

22  that said that these are the hours that had been

36

1   provided?

2       A    They did not.

3       Q    Now, was--these fourth-advisory classes,

4   these electives, were they selected randomly?  Was

5   there any purpose that these particular classes

6   were in the fourth advisory?

7       A    I don't know what the selection process

8   entailed, but Ms. Lee indicated that the Student

9   was in a position that would have prevented him

10  from graduating, had he not loaded his schedule

11  with electives.  And, again, my concern was, given

12  the Student's glaring deficiencies, how could it

13  have been that he was put in that position?  He

14  needs specialized instruction.

15      Q    Why couldn't--if he'd gotten specialized

16  instruction in these other classes other than

17  history?

18      A    Another question I had to Ms. Lee at the

19  meeting yesterday, there were, among those

20  electives, a few courses which certainly would have

21  had some academic content and in those courses, I

22  inquired about whether someone from the special-ed

1  department could have gone into the classroom,

2  worked collaboratively with the instructor to still

3  try to bolster some of those skills in areas of

4  deficit.

5      Q    What was their response?

6      A    She said that she could not answer to

7  that, that she had just taken over the special-ed

8  coordinator position last spring.  And that if the

9  Student had really felt he needed help, he could

10 have gone and asked for help.

11          And, again, I responded that those

12 instructional--specialized instructional hours were

13 not a function of a Student's volition, they should

14 have been provided per the IEP.  He should not have

15 had to go an ask for help that should have been

16 made available to him.

17     Q    So, if I understand, Ms. Lee's position

18 was he should have asked or he should have gone

19 above what the requirements of his IEP to ask for

20 additional services?

21     A    She felt he should have gone and asked for

22 help if he felt their help was not sufficient.

 1      Q    What's Angelo doing now for his education?

 2      A    Again, he's enrolled in the University of

 3  the District of Columbia, according to him in three

 4  remedial courses.  And struggling mightily.  He,

 5  yesterday asked me about what will happen if he

 6  does not pass to the grant money that he's

 7  obtained.  And I, obviously, couldn't answer that,

 8  but he says he needs all the help he can get and

 9  he's at great risk for not passing these courses.

10      Q    So, is he not allowed to move on to a full

11  college curriculum until he's passed these courses?

12      A    He can't, until he passes the test at the

13  conclusion of each of the remedial courses, he'll

14  not be able to move on to a true freshman

15  curriculum.

16      Q    And if he doesn't pass these classes then,

17  not only is he not allowed to move on to a true

18  freshman curriculum, but he's potentially risking

19  the loss of grant money that would allow him to

20  continue in college?

21      A    I'm not certain, I would assume so.

22      Q    Okay.  Would you say that any of these

wtk                                                                          39

1    problems could be extending from him not getting

2    appropriate services in school, while he was

3    attending Wilson in the areas of these remedial

4    classes?

5              MS. RODI:  Objection.

6              HEARING OFFICER BANKS:  What problems are

7    you talking about?

8              MR. LAMMERS:  Having problems passing his

9    remedial classes, being required to take remedial

10   classes before he can move on to a full college

11   curriculum.

12             HEARING OFFICER BANKS:  Sustained.

13             MR. LAMMERS:  Okay.

14             THE WITNESS:  Undoubtedly--

15             MS. RODI:  Objection.

16             MR. LAMMERS:  No, the objection was

17   sustained.

18             THE WITNESS:  Oh, I'm sorry, excuse me.

19             MR. LAMMERS:  I don't have any other

20   questions for you at this time, Mr. Carter.

21                       CROSS-EXAMINATION

22             BY MS. RODI:

1    Q    Mr. Carter, at the meeting, yesterday, did

2  the teachers express the fact that Angelo did not

3  attend classes?

4    A    They did say that there were classes that

5  he would not attend on a regular basis.

6    Q    Did they say that he, specifically, chose

7  to go to the Roosevelt program?

8    A    They didn't say that, he said that he went

9  to the Roosevelt program because he'd gotten an F

10  in the English 2 course and he wanted to graduate

11  in a timely fashion, so he wanted to take it

12  elsewhere.

13    Q    How did he do when he went to Roosevelt?

14    A    I know he passed the course, I don't know

15  the particular grade he got, I know it was, at

16  least, a satisfactory grade.

17    Q    Looking at the report card, which is under

18  DCPS 1, what were his English grades at Roosevelt?

19    A    No, that's Parker.

20    Q    No, it's the bright one, Roosevelt.

21    A    Oh, okay, I'm sorry--he got a D, excuse

22  me.

wtk                                                                 41

1        D    He got a D and, then, what did he get in

2    the other classes?

3        A    Earth science was a C grade; and, then,

4    English 4, was an A-minus.

5        D    So, he went from an F and then was managed

6    to pull it up to an A-minus, is that correct?

7        A    Apparently so.

8             HEARING OFFICER BANKS:  I'm sorry, I

9    thought you said he got a D in English?

10            MS. RODI:  He had two English classes,

11   one, that English 2 he went and got a B and then

12   English 4, he went and got an A-minus.

13            BY MS. RODI:

14       Q    Isn't it true, yesterday, that you

15   discussed that he did not want to attend

16   counseling?  Hold on.

17            [Technical interruption.]

18            BY MS. RODI:

19       Q    Did he, at some point refuse to

20   participate in counseling?

21       A    Ms. Lee asked the Student that at the

22   meeting yesterday and he said there were times that

wtk                                                                    42

1  the counselor would want to see him and he would

2  not attend counseling.

3      Q    Did Angelo, while he was in school, want

4  to get his diploma?

5      A    It's my understanding, he's always wanted

6  to graduate, receive a diploma.

7      Q    He did graduate with a high-school

8  diploma, is that correct?

9      A    He did.

10          MS. RODI:  No further questions.

11          HEARING OFFICER BANKS:  Mr. Lammers?

12                  REDIRECT EXAMINATION

13          BY MR. LAMMERS:

14      Q    Mr. Carter, in relation to the question of

15  absences, can you tell me if ED is part of the

16  classification for Angelo?

17      A    Yes it is.

18      Q    The school is aware of that?

19      A    Yes, they are.

20      Q    Is that attached to his IEP?

21      A    Yes.

22      Q    All right.  I know that there was a

1    discussion in particular related service

2    counseling; at this meeting, was Angelo also or did

3    he make any statement or was any statement made

4    that he didn't want specialized instruction?

5        A    No, he never represented that.

6        Q    Understanding--your understanding is that

7    Angelo wanted to graduate, was Angelo put in a

8    position or does it seem that he was put in a

9    position where he could have both his specialized

10   instruction and graduate?

11       A    Let me make certain I understand your

12   question, could you reframe it?

13            HEARING OFFICER BANKS:   If he took all the

14   specialized instruction--

15            THE WITNESS:   Right.

16            HEARING OFFICER BANKS:   --last year, could

17   he have graduated in June?

18            BY MR. LAMMERS:

19       Q    According to what your understanding from

20   that meeting was?

21       A    Oh, absolutely.

22            HEARING OFFICER BANKS:   How is it

1    absolutely if he had to go to Roosevelt to gain

2    credits?

3         THE WITNESS:  So, you're saying, had they

4    provided the specialized instruction as they should

5    have?

6         HEARING OFFICER BANKS:  I'm saying, was it

7    possible for him to get a diploma of graduation,

8    not a certificate of attendance, but  diploma of

9    graduation had he gotten the specialized

10   instruction--

11        THE WITNESS:  Oh, no.

12        HEARING OFFICER BANKS:   --required under

13   the IEP?

14        THE WITNESS:  No, his graduation would

15   have been delayed.

16        MR. LAMMERS:  Thank you, very much, no

17   further questions.

18        MS. RODI:  I just have one more question.

19                 RECROSS-EXAMINATION

20        BY MS. RODI:

21      Q    Did they give you any service logs

22   yesterday?

wtk                                                                                      45

1          A    I got a few service logs and a report

2    card, and that's pretty much the gist of it.

3               MS. RODI:  Thanks, no further questions.

4               THE WITNESS:  Tracking forms, I'm sorry,

5    you said service logs.

6               HEARING OFFICER BANKS:  Tracking forms.

7    All right.  My question is, if he didn't get a

8    diploma could he have enrolled at UDC?

9               THE WITNESS:  That is a question, I can't

10   answer, I don't know.

11              MS. RODI:  I believe if you need a

12   high-school diploma to enroll in UDC.

13              HEARING OFFICER BANKS:  So, here's where

14   we are:  You're here complaining that he's having

15   trouble at UDC because of services he didn't get,

16   i.e., specialized instruction.  But if he'd gotten

17   specialized instruction, he wouldn't have gotten a

18   diploma and he wouldn't be able to go to UDC,

19   anyway.

20              MR. LAMMERS:  Well, practically speaking--

21              HEARING OFFICER BANKS:  So, which do you

22   want?

46

1            MR. LAMMERS:   Well, practically speaking

2    DCPS could have provided a specialized instructor

3    for any of these elective classes and still allowed

4    him to graduate on time and get a specialized

5    instruction.   A student shouldn't have to be

6    choosing--

7            HEARING OFFICER BANKS:   Well, that's the

8    way the system works.   If you're a full-time,

9    specialized instruction, I'm not sure you can get a

10   diploma.

11           MR. LAMMERS:   My understanding is the only

12   thing that limits that is the actual, whose

13   teaching the actual courses and what services are

14   available.

15           HEARING OFFICER BANKS:   No.

16           MS. RODI:   No.

17           HEARING OFFICER BANKS:   You have to be on

18   a diploma track to get a diploma.   And if you're

19   full-time specialized instruction, my understanding

20   is you don't get a diploma.   It's not my burden,

21   folks.   Do you have a witness you want to call now?

22           MS. RODI:   Yes, I do, Ms. Lee.

wtk                                                                    47

1              HEARING OFFICER BANKS:  Make sure you ask

2    Ms. Lee about this?

3              MS. RODI:  About the diploma?

4              [Phone call placed.]

5              MS. RODI:  I just want to clarify, Ms. Lee

6    may be called away at any time because of her

7    Unintelligible]--

8              HEARING OFFICER BANKS:  That's not my

9    problem.

10             Whereupon,

11                         SONYA LEE

12   was called as a witness and, having been first duly

13   sworn by the Hearing Officer was examined and

14   testified as follows:

15             HEARING OFFICER BANKS:  Go ahead, Ms.

16   Rodi.

17                    DIRECT EXAMINATION

18             BY MS. RODI:

19      Q    Ms. Lee, did you attend a meeting for

20   Angelo Rivas-Gregory yesterday?

21      A    Yes, I did.

22      Q    What was the topic of that meeting?

wtk                                                                      48

1        A    To discuss comp-ed.

2        Q    What was your--determination at the

3   meeting?

4        A    That Wilson Senior High School did not owe

5   Mr. Angelo Gregory any type of comp-ed, either by

6   specialized instruction or related services.

7        Q    Why did you determine that?

8        A    Based on we provided him specialized

9   instruction with special-ed teachers according to

10  his IEP and based on encounter tracking forms from

11  the social worker indicating he was never available

12  for counseling and he denied counseling at several

13  times.

14       Q    Are the notes that--the four-page notes,

15  do they accurately reflect the meeting yesterday?

16       A    Yes, they do.

17       Q    Did you take those notes?

18       A    No, I didn't, Ms. Linear, the special-ed

19  teacher that had Mr. Gregory for U.S. History, took

20  the notes.

21       Q    Ms. Lee, why did the Student now--why did

22  the Student--why did the Student not--I'm going to

wtk

1    rephrase.  One of the issues here is whether the

2    Student would have been able to graduate and get

3    all of his hours.  Was the Student ready to

4    graduate and--was the Student able to get all of

5    his hours and graduate?

6        A    Yes, on time, I believe you have a copy of

7    his transcript there.  He completed all his class

8    requirements to graduate on time.

9        Q    But were all--did he get the full 25 hours

10   last year?

11       A    Twenty-fives hours--22.5 hours?

12       Q    Yes.

13       A    Of specialized instruction?

14       Q    Yes.

15       A    No, but he received specialized

16   instruction in the one class.  The other classes

17   were electives, but he was being monitored by the

18   special-ed teacher for those classes, for his

19   electives.

20       Q    Why did he take electives and not

21   special-ed classes?

22       A    He needed the electives to graduate.

wtk                                                                    50

1       Q    So, had he chosen to take classes with the

2   special-ed teacher, would he have graduated on

3   time?

4       A    Yes.

5       Q    So, I'm confused, why was he doing the

6   special-ed and these electives were just taking

7   classes with a special-ed teacher?

8       A    In reference to his classes that he had to

9   take last year?

10      Q    Yes.

11      A    Those were all required classes to

12  graduate.  He needed several elective classes.  The

13  only major class that he needed was the what is it,

14  the history class--

15      Q    U.S. Government?

16      A    Yes, the U.S. Government class, that's the

17  only elective he needed, and that was taught by a

18  special-ed, dually certified teacher.

19      Q    But other ones, like, concert choir, band,

20  photo technology, financial planning?

21      A    Mm-hmm.

22      Q    Those were electives?

wtk                                                                  51

1        A    Those are all electives that he needed,

2   yes, to graduate.

3        Q    So, that, you had to fill his class, then

4   in order for him to graduate?

5        A    That's correct, his schedule, yes.

6        Q    Right.  So, how many hours did he get last

7   year?

8        A    In reference to specialized-instruction?

9        Q    Correct.

10       A    Last--specialized instruction, it would

11  have been for the academic class, it would have

12  been U.S. Government, that was three times a week

13  and it was an every-other-day situation, so he got

14  between 10 to 15 hours.

15       Q    Also, on his schedule, it says that he was

16  in conversational Spanish to SPET?

17       A    Yeah, that's a special-ed teacher.

18       Q    Uh-huh.

19       A    That was Mr. Alfonso [ph].

20       Q    Okay, so it was--

21       A    And he was a dually certified special-ed

22  teacher.

wtk                                                                    52

1      Q    So, would that add to his hours?

2      A    Yes, ma'am.

3      Q    Then everything else was--

4      A    Electives.

5      Q    --okay in order for him to graduate?

6      A    Graduate, yes.

7           MS. RODI.  At this time, I have no further

8  questions.

9           HEARING OFFICER BANKS:  Mr. Lammers.

10                    CROSS-EXAMINATION

11          BY MR. LAMMERS:

12     Q    Ms. Lee, I understand you're the

13  special-ed coordinator, can you tell me what your

14  background, your educational certifications are?

15     A    I have a master's in special education.

16     Q    Are you a certified special-education

17  teacher, as well?

18     A    Yes.

19     Q    Can you tell me the year that expires?

20     A    No, I cannot tell you the year that it

21  expires.

22          MS. RODI:  Relevance, she's not--

wtk                                                                      53

1              HEARING OFFICER BANKS:   Let's go.

2              MS. RODI:   Okay.

3              BY MR. LAMMERS:

4         Q    You're responsible for ensuring that all

5    students are evaluated and given an appropriate

6    IEP, is that right, Ms. Lee?

7         A    That's correct.

8         Q    You're also responsible for making sure

9    that special education students get all the

10   required services under their IEP, is that right?

11        A    That's correct.

12        Q    Now, my understanding is the IEP requires

13   22.5 hours of specialized instruction, is that

14   correct?

15        A    That's correct.

16        Q    Looking at the schedule and what you said,

17   the only class where he was getting or being taught

18   by a special-education instructor was this U.S.

19   Government class.

20        A    The U.S. Government, as well as the

21   Spanish, conversational Spanish class.

22        Q    The conversational Spanish class, that

wtk                                                                                    54

1    teacher was certified, as well?

2        A    Yes, sir.

3        Q    All right, now do you have any service

4    logs or were you able to provide any service logs

5    that covered that year or the '02/'03; '04/'05 or

6    '0--I'm sorry, the last three school years other

7    than counseling, specifically for specialized

8    instruction?

9        A    I'm sorry, could you repeat the question?

10       Q    Were you able to give any service logs

11   that show, that document that he was getting his

12   specialized instruction throughout the past three

13   school years?

14            Ms. RODI:  Objection, there are no

15   services logs for specialized instruction.

16            HEARING OFFICER BANKS:  There's a valid

17   objection to that question, but that's not it.

18   Ma'am are there service logs for specialized

19   instruction?

20            THE WITNESS:  Are there logs?  Based on

21   his report card, there would be comments on the

22   report card indicating if he had excellent

1    behavior; good participation; if he was excessive

2    absences, that would be noted on the report card.

3              HEARING OFFICER BANKS:  No, I guess what

4    mr. Lammers is trying to get at is to whether or

5    not he received specialized instruction for the

6    last three years?

7              THE WITNESS:  Yes, he did.

8              BY MR. LAMMERS:

9        Q    And how is that documented?  Are there any

10   IEP progress reports that--

11       A    Besides on the IEP it's on his transcript

12   indicating what teachers he was serviced by.

13       Q    You mentioned these other classes were

14   electives and that he had to take them to graduate,

15   is that correct?

16       A    That's correct.

17       Q    Why couldn't these classes also be

18   specialized instruction classes, what would be

19   required to make an elective class, for example,

20   financial planning, also provide specialized

21   instruction in math?

22       A    I can't answer that question.  If you

wtk

56

1   wanted that to be a special-ed class, is that what

2   you're asking?

3       Q    Right, for financial planning, if he had

4   to take financial planning, for instance, as an

5   elective--

6       A    Mm-hmm.

7       Q    --and that is mathematically based?

8       A    Mm-hmm.

9       Q    And his IEP required specialized

10  instruction with math goals, what would be required

11  for him to get specialized instruction in that

12  class?

13      A    The case manager, Mr. Mills would monitor

14  that class, which he did, while Mr. Gregory was

15  there with the teacher, so if there was any

16  problems, he could have been pulled out to do the

17  work with Mr. Mills.

18      Q    If the teacher had been a dual-certified

19  teacher in that subject area and special education,

20  would the class,itself, then, have met their

21  requirements of specialized instruction for that

22  particular class or that particular hours?

wtk                                                                          57

1        A    Yes, sir.

2        Q    But you didn't have a dual certified

3   teacher for that class?

4        A    No, we did not in that particular content

5   area, no, we did not.

6        Q    So, were there electives that he could

7   have taken to graduate in his fourth advisory that

8   would have given him specialized instruction while

9   he was taking the class, as opposed to having to

10  have someone monitor and give him services, I

11  assume after school?

12       A    Repeat the question, again, please?

13       Q    If he had to take--I'll cut it up.  He had

14  to take elective classes to graduate--

15            HEARING OFFICER BANKS:  No, were there

16  courses taught by certified specialized

17  instruction--certified teachers, were there

18  electives taught by certified special-education

19  teachers that he could have took that would have

20  given him--

21            THE WITNESS:  The electives that he

22  needed?

wtk                                                                        58

1              HEARING OFFICER BANKS:  Right.

2              THE WITNESS:  Not that I'm aware of, no.

3        Q    But the only thing that would have been

4   required to convert an elective class into a class

5   that could have given him his

6   specialized-instruction hours would be a

7   dual-certified teacher, is that correct?

8        A    In that academic area, yeah.

9        Q    Thank you.  Now, we mentioned English 2,

10  earlier and I understand that was discussed at the

11  meeting.  Was that English 2 class taught by a

12  dual-certified instructor?

13       Q    The English 2 that he received the F in?

14       A    Yes.

15       A    I, again, based on the notes, I'm not for

16  sure if that person was dual certified or not, the

17  teacher is no longer here.

18       Q    So you don't know for certain that that

19  teacher was--had a specialized certification?

20       A    No, I am not.

21       Q    One minute ma'am.  Are you aware that DCPS

22  was required to schedule the MDT meeting to

wtk                                                                    59

1   determine the amount of compensatory education,

2   Angelo is supposed to receive within 30 days of an

3   order that was issued at the end of August?

4        A    Within 30 days?  No, I was not.

5        Q    Did you receive a letter from Mr. Hill at

6   any point attempting to schedule this meeting?

7        A    Yes, I did.

8        Q    When was the meeting eventually--

9             HEARING OFFICER BANKS:  The meeting didn't

10  take place.

11            MR. LAMMERS:  Okay fine.

12            HEARING OFFICER BANKS:  It either took

13  place or it didn't.

14            MR. LAMMERS:  Okay.

15            HEARING OFFICER BANKS:  DC hasn't

16  explained why it didn't so, I don't know why you

17  have to beat a dead horse.

18            MS. RODI:  Well, the MDT meeting took

19  place.

20            HEARING OFFICER BANKS:  It was yesterday.

21  What he's saying is the meeting should have taken

22  place within 30 days of August.  I didn't hear

1    anything from DC about why it didn't.  So, I'm not

2    sure why he's going into it on cross.

3         BY MR. LAMMERS:

4         Q    One more issue, Ms. Lee about the English

5    2 class.  You mentioned that you weren't that that

6    teacher was dual certified, did Ms Linear, who also

7    attended that meeting state that he wasn't dually

8    certified?

9         A    You would have to refer back to the

10   meeting notes, I'm not for sure.

11        Q    When you say he was monitored by a

12   special-ed teacher in these classes, what exactly

13   does that entail?

14        A    The teacher, the case manager is assigned

15   to go in to see the Student's progress with the

16   teachers.  If there's any accommodations or

17   modifications that need to be made while in the

18   classroom, the teacher works with that particular

19   teacher to assist.

20        Q    But this person isn't actually teaching

21   the class, then?

22        A    The teacher is not teaching the class.

wtk                                                                    61

1       Q    And this teacher isn't removing students

2   and teaching a parallel class, I guess, with

3   specialized instruction, then?

4       A    He, the Student can, if he elects to, come

5   out and do the work with the special-ed teacher, he

6   has the option to do that if he wishes to.

7       Q    But this wasn't set up automatically,

8   based on the IEP?

9       A    No, it was not.

10          MR. LAMMERS:  I have no further questions.

11          HEARING OFFICER BANKS:  Any redirect?

12          MS. RODI:  I have just two more.

13                    REDIRECT EXAMINATION

14          BY MS. RODI:

15      Q    Ms. Lee, would the Student have a

16  dually-certified marching band teacher in the last

17  semester?

18      A    I don't believe so.

19      Q    Would he have a dually certified

20  concert-choir teacher in the last semester?

21      A    We just recently, this year have obtained

22  dual-certified music teacher.

wtk                                                                    62

1          Q    But there was support for one wasn't

2     there?

3          A    That's correct, there was, I believe the

4     teacher's name is Ms. Williams [ph], that's

5     correct.

6          Q    Did Angelo ever ask to do his concert

7     choir work with his special-ed teacher?

8          A    Not that I'm aware of, no.

9          Q    So, he was only taking four classes last

10    semester, is that correct--I'm sorry, he was only

11    taking five classes?

12         A    Five classes, yeah.

13              MS. RODI.   Thank you, no further

14    questions.

15              HEARING OFFICER BANKS:   Ms. Lee, I just

16    have a general question.

17              THE WITNESS:   Yes?

18              HEARING OFFICER BANKS:   If a student

19    is--this student was getting 22 and a--what was he

20    getting--supposed to get 22 hours?

21              THE WITNESS:   Yes, sir.

22              HEARING OFFICER BANKS:   If you're getting

wtk                                                                    63

1   22 hours of specialized instruction in high school,

2   are you on track to graduate or can you be on track

3   to graduate with a diploma?

4          THE WITNESS:  Yes, sir.

5          HEARING OFFICER BANKS:  Okay.  And explain

6   to me how you do that.

7          THE WITNESS:  Well, based on the schedule

8   that the Student has, we have, again,

9   dual-certified teachers in all content areas, as in

10  math, English, science and social studies.  So,

11  with the requirements, with the required English

12  courses, we have teachers for ninth grade all the

13  way up to 12th grade in English; we have the

14  requirements for the math, because you need three

15  years of math; with the science and the social

16  studies, we have teachers for those classes.

17         HEARING OFFICER BANKS:  Okay.

18         THE WITNESS:  The only classes that the

19  students that the students would need are the

20  electives.

21         HEARING OFFICER BANKS:  So, why was this

22  particular student not in a position to graduate--I

1  guess why--do you have any idea why these electives

2  were not done prior to this semester?

3          THE WITNESS:  No, sir, probably the best

4  person to ask would be Angelo.  I think the thing,

5  if you looked in his transcript, some electives he

6  did attempt and he didn't pass so he had to repeat

7  some of those electives.

8          HEARING OFFICER BANKS:  Thank you very

9  much.

10          HEARING OFFICER BANKS:  Thanks, Sonia,

11  talk to you later.

12          HEARING OFFICER BANKS:  Okay, we took Ms.

13  Lee out of turn, Mr. Lammers, you can call more

14  witnesses.

15          MR. LAMMERS:  I'd like to call Angelo

16  Rivas at this time.

17          HEARING OFFICER BANKS:  Okay.

18          [Phone call placed.]

19          Whereupon,

20              ANGELO RIVAS-GREGORY

21  was called as a witness and, having been first duly

22  sworn by the Hearing Officer was examined and

wtk                                                                    65

1    testified as follows:

2              HEARING OFFICER BANKS:  Go ahead, Mr.

3    Lammers.

4                    DIRECT EXAMINATION

5              BY MR. LAMMERS:

6        Q    Angelo, can I have your full name, please?

7        A    My name is Angelo Rivas Gregory.

8        Q    Did you attend Wilson Senior High School

9    during the past three school years?

10       A    Yes, sir.

11       Q    Just quickly, do you remember taking

12   English 2?

13       A    Yes, sir.

14       Q    Do you remember what grade you received in

15   that class.

16       A    I failed it, so, I had a F.

17       Q    Did they reschedule you--how did you

18   manage to fulfill that requirement?

19       A    I fulfilled the requirement by going out

20   of my way and studying as hard as I can for the

21   course and I took it at a night school class at

22   Roosevelt Stay.

wtk                                                                    66

1        Q    Where are you going to school now?

2        A    I'm attending here at the University of

3   the District of Columbia.

4        Q    Are you taking the regular first year or

5   regular freshman classes that all entering freshman

6   students are or I should say the freshman students

7   typically take?

8        A    Yes, I'm taking remedial classes because I

9   failed the placement test.  So, these classes were

10  required.

11       Q    So, you have to take these remedial

12  classes in order to then move on and take any other

13  classes at UDC?

14       A    Correct.

15       Q    What classes are you in right now, which

16  remedial classes?

17       A    I'm in reading improvement; English

18  fundamentals; and basic mathematics.

19       Q    How are you doing in these classes, right

20  now?

21       A    Well, I'm certain I may be failing, but it

22  all boils down to my final and it all depends on my

wtk                                                                    67

1    finals.

2       Q    What happens if you don't pass these

3    classes?

4       A    Well, I already don't get credentials or

5    credits for these courses.  But I will, maybe have

6    to repeat these courses once again.

7       Q    If you never pass these classes, are you

8    going to be allowed to go on and take other college

9    classes?

10      A    No, sir.

11      Q    These remedial classes are in English or

12   reading and math?

13      A    Yes.

14      Q    Did you receive any specialized

15   instruction in reading during the last advisory

16   last year?

17      A    In Wilson?

18      Q    In Wilson, right, did you have an English

19   class or something or a tutor or someone who met

20   with you and gave you specialized instruction in

21   English or reading?

22      A    No, sir.

wtk                                                                        68

1      Q    Did anyone give you specialized

2   instruction in math?

3      A    No, sir.

4      Q    Angelo, what type of equipment do you need

5   right now at college or are you missing at college?

6      A    Well, I need access to a computer at all

7   times.   I need tutoring services, they are required

8   for me to get through this situation that I am in

9   right now.

10     Q    Do you feel that you're going to be able

11  to pass these finals in your remedial classes if

12  you don't have tutoring or extra help?

13     A    I don't believe will pass, but I would do

14  everything in my power to try.

15     Q    Did you, at any point say, while you were

16  at Wilson, that you didn't want your specialized

17  instruction services, that you didn't want the

18  extra help?

19     A    I can't say I refused the help.

20     Q    Mm-hmm.

21     A    Maybe I departed from a classroom in an

22  overwhelming manner not being able to compete with

1   my peers with that work.

2        Q    Did you ever meet with a service monitor,

3   is how it's been described for me?  I know that you

4   had a teacher in a U.S. Government class that was a

5   special-education teacher, that's correct?

6        A    Yes.

7        Q    Did you ever meet with a service monitor

8   or did someone give you assistance in financial

9   planning?

10       A    Can you repeat that question, please?

11       Q    Sure, you took financial planning last

12  year, if I remember?

13       A    Correct.

14       Q    Did you ever meet with a monitor or

15  someone who wasn't our teacher, but told you that

16  they were going to be helping you with that class

17  or could help you with that class?

18       A    No.

19       Q    How about any of your other classes, other

20  than government?

21       A    None, whatsoever.

22            MR. LAMMERS:  No further questions at this

wtk                                                                70

1    time.

2              HEARING OFFICER BANKS:  Ms. Rodi?

3                   CROSS-EXAMINATION

4         BY MS. RODI:

5         Q    His, Mr.--is it Rivas-Gregory or

6    Gregory-Rivas?

7         A    Rivas-Gregory.

8         Q    Rivas-Gregory.  Okay, Mr. Rivas-Gregory,

9    first of all, why did you take English 4 at

10   Roosevelt Stay High School?

11        A    A teacher--a former teacher and former

12   case manager of mine, Ms. Keys [ph]--

13        Q    Mm-hmm.

14        A    --she suggested that I take a course in

15   English 4 to get ahead, as far as the graduation

16   requirements was concerned.

17        Q    So, you--so at the end of 2004, you had

18   already taken your senior English class, right/

19        A    Correct.

20        Q    And you chose to do that, is that correct?

21        A    Correct.

22        Q    So you were taking two English classes at

wtk                                                                        71

1    the same time?

2        A    Incorrect.

3        Q    When were you taking--when did you take

4    English 3; and, then, when did you take English 4/

5        A    I took English 3, which was, I had a

6    special-ed teacher in the class and I took English

7    4, during night school.

8        Q    Well, you took--so you took it during the

9    same semester, right?

10       A    I can't remember, but, maybe, maybe.

11       Q    So, by the time you got to your senior

12   year, you had already finished all your English

13   credits, right?

14       A    Correct.

15       Q    You got A-minuses in both of those, right?

16       A    Correct.

17       Q    You just said that you didn't get any

18   support in financial planning or, like, concert

19   choir, or marching band, right?

20       A    Correct.

21       Q    Did you need support in those classes?

22       A    Ma'am?

wtk                                                                    72

1      Q    Did you need the support last year?

2      A    Did I need the support?

3      Q    Did you need extra help?

4      A    Did I need extra help in those sections?

5      Q    Yeah.

6      A    No.

7      Q    Because you did pretty well, didn't you?

8      A    Yes, I tried my very best.

9      Q    Yeah, looks like you got two A's and a B.

10     A    Yes.

11     Q    I have your report card in front of me, so

12   that's how I know.

13     A    Did you want to graduate in four years?

14     Q    Could you repeat that, please?

15     A    Yes.

16     Q    Did you want to graduate in four years?

17     A    Yes.

18     Q    Did you feel like you were ready to

19   graduate?

20     A    No.

21     Q    Then why did you graduate?

22     A    I graduated because it was a must and

wtk                                                                      73

1   because I deserved it.

2       Q    Is that why you took all those extra

3   electives in your last year?

4       A    Correct.

5           MS. RODI:  I have no further questions,

6   thank you, Mr. Rivas-Gregory.

7           MR. LAMMERS:  One redirect question.

8                    REDIRECT EXAMINATION

9           BY MR. LAMMERS:

10      Q    Angelo, one more question for you.  When

11  you were signing up for these classes or when

12  registration happened each year, was anyone telling

13  you, like, Ms. Lee, telling you that you couldn't

14  sign up for these classes because you wouldn't be

15  able to get your specialized instruction?

16      A    No, actually, Ms. Lee was not present at

17  the time, there was no coordinator at the time in

18  the office.  If there was it was Rondal Randal [ph]

19  and he did not inform me of these specialized

20  instructions at that time.

21      Q    So, no special-ed coordinator told you

22  when you were registering for these classes that

wtk                                                                    74

1    you couldn't get your specialized instruction in

2    these classes?

3        A    Correct.

4            MR. LAMMERS:  No further questions.

5            HEARING OFFICER BANKS:  Thank you.

6            MS. RODI:  Thank you, Mr. Rivas-Gregory.

7            THE WITNESS:  All right.

8            HEARING OFFICER BANKS:  Now where are

9    these grades you all were looking at?

10           MS. RODI:  DCPS-01.

11           HEARING OFFICER BANKS:  DCPS-1?

12           MS. RODI:  It's right after the meeting

13   notes.

14           HEARING OFFICER BANKS:  I just wanted to

15   know where they were.

16           MS. RODI:  His whole transcript and then

17   his most-recent, his last year's grades.

18           HEARING OFFICER BANKS:  Mr. Lammers your

19   other witness?

20           MR. LAMMERS:  I would call Mr. Hill to

21   specify the communications that took back and forth

22   in the Record, but if you're satisfied with that it

1    wasn't convened within 30 days or until the 30th, I

2    don't think I need to.

3            HEARING OFFICER BANKS:  What I'm saying,

4    if it's not in the Record and it didn't take place,

5    it didn't take place.

6            MR. LAMMERS:  No, it would just be to

7    show--

8            HEARING OFFICER BANKS:  And DC can come in

9    and tell me why it didn't take place, but if it's

10   not documented that it took place, I don't really

11   care why it didn't.

12           MR. LAMMERS:  Okay.

13           HEARING OFFICER BANKS:  So, is that it.

14           MR. LAMMERS:  Okay, and by that time, I'd

15   be ready to offer a closing statement.

16           HEARING OFFICER BANKS:  Well, if the only

17   issue is comp-ed, you haven't made a showing.

18           MR. LAMMERS:  Well, my position is that

19   we've now shown that they have not been able to

20   produce any IEP progress reports or other

21   documents--

22           HEARING OFFICER BANKS:  Let's concede they

1    didn't do it.

2              MR. LAMMERS:  Okay.

3              HEARING OFFICER BANKS:  Let's concede they

4    provided none, you haven't established in my mind a

5    showing required under "Reed" as to entitlement to

6    comp-ed.

7              MR. LAMMERS:  We've shown that there has

8    been a violation; we've shown that there's harm

9    based on Angelo's own testimony on what he has to

10   do at that time.

11             HEARING OFFICER BANKS:  You've never shown

12   us there was a harm.  What you've shown is, he's

13   having trouble this year.  And he's taking remedial

14   English and math, my quick review of the transcript

15   shows that he passed English and math in DC, high

16   school.  So, how, what evidence have you shown that

17   because DC didn't comply with the HOD in August,

18   that that's the reason he's having trouble now?

19             MR. LAMMERS:  All we can show is because

20   all we have is what DCPS has provided to us in the

21   Student records and with evaluations that the IEP

22   shows that his grade-level areas, back two school

wtk                                                              77

1   years ago or at the end of the 2004 period.

2          HEARING OFFICER BANKS:  Here's what you've

3   got to show under "Reed:"  If there's a violation,

4   if you're seeking comp-ed, what you've got to show

5   is, No.1, that there's a violation; I'm conceding

6   that you've shown that.  Now you've got to show the

7   harm that was caused by that violation and how the

8   proposed comp-ed is going to remedy that harm.

9          I haven't heard anything as to why, as to

10  what level of harm he suffered, as a direct result

11  of this particular violation.  Whatever it was a

12  year ago, he's reading at a fifth-grade level.

13  He's doing math at a fourth-grade level.  That

14  didn't happen in August of '05.

15         MR. LAMMERS:  Right, I understand.  I'm

16  telling you--

17         HEARING OFFICER BANKS:  So, you haven't

18  shown me how this violation gives rise to

19  compensable comp-ed that I can award.  I can't

20  award it just because he didn't get services to

21  which he was entitled.  That's why I sustained

22  objections as to what he didn't get for the last

1   three years.

2          Under "Reed" you've got to make a showing,

3   the burden's on you.  What did he lose?  How can it

4   be compensated?

5          MR. LAMMERS:  Well, Mr. Banks, I would

6   still say that what we have provided is testimony

7   that he is having trouble, he is--

8          HEARING OFFICER BANKS:  I'll concede he's

9   having trouble.  What does that have to do with the

10  violation?

11         MR. LAMMERS:  That he's been forced--that

12  violation has now led to it.  In order for me to

13  get anymore detailed information, the Student would

14  have to pay at his own expense for educational

15  evaluations or additional data and we can't show.

16  The burden of proof, in general, is on DCPS.

17         HEARING OFFICER BANKS:  Not for

18  comp-ed--not for comp-ed.  Under comp-ed, the

19  burden is on the Petitioner.

20         MR. LAMMERS:  Well, all I can state today,

21  Mr. Banks, is that we've shown the violation, which

22  you agree was shown.  That we've shown that he was

wtk                                                                    79

1    below--significantly below his grade level--

2              HEARING OFFICER BANKS:  It was before the

3    violation.

4              MR. LAMMERS:  Before these violations,

5    that he has then suffered these violations, not

6    gotten services, which Angelo has testified to,

7    which we have no service or documentation to

8    indicate that he's been receiving specialized

9    instruction.

10             I'm not just talking about putting him in

11   a class; anyone can be in financial planning;

12   anyone can be in U.S. Government.  You have the

13   additional protections and the goals that are

14   supposed to be achieved under your IEP.

15             HEARING OFFICER BANKS:  Mr. Lammers--

16             MR. LAMMERS:  And there's been now showing

17   and the harm has been demonstrated.

18             HEARING OFFICER BANKS:  He graduated--it's

19   a tenuous case to begin with because he's graduated

20   already.

21             Now, we can argue about the value of the

22   diploma, but he graduated.  But the fact of the

wtk                                                                    80

1    matter is, under "Reed" there's a showing that

2    Petitioner has to make.  You didn't make it, I'm

3    sorry, you've got to look at "Reed" and if you're

4    going to bring a comp-ed case, you just can't come

5    in and say, he didn't get this, therefore, he's

6    entitled to that.  There's no testimony, other than

7    from the witness himself that he needs a laptop.

8            There's no witness, no documentation that

9    this violation caused him to need 2,000 hours of

10   comp-ed.

11           MR. LAMMERS:  Well, then, at that point, I

12   would request, as the relief originally stated that

13   a meeting be convened or a comp-ed meeting be

14   convened to discuss that some comp-ed must be

15   delivered.  Now, obviously, you can rule any way

16   you want, I'm just making my argument.

17           HEARING OFFICER BANKS:  No, this was the

18   case to determine how much was necessary.  The

19   standard is set out in "Reed," and you didn't meet

20   that standard.  We're not going to have endless

21   hearings on the same issue.  This is the second

22   hearing on this issue.  If you're going to come in

wtk                                                                         81

1   and allege comp-ed was necessary, you've got to

2   show, under "Reed" how much is necessary and why.

3   The hearing is adjourned.

4           [Whereupon, the hearing was concluded.]

5                           -  -  -

MILLER REPORTING CO., INC.
735 8th STREET, S.E.
WASHINGTON, D.C.  20003-2802
(202) 546-6666

# CERTIFICATE

I, hereby, certify that the tape recording represented by the foregoing pages was transcribed by me; and that the foregoing transcript is a correct and accurate record of the proceedings to the best of my knowledge, ability and belief.

*William T. Kennedy*

**WILLIAM T. KENNEDY**

**TRANSCRIBER**