UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGELO GREGORY-RIVAS,<br>Plaintiff | )<br>)<br>)<br>)<br>) |
| v. | ) Civil Action No: 06-00563(HHK)<br>)<br>) |
| DISTRICT OF COLUMBIA, | )<br>)<br>) |
| **Defendants** | ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I. FACTUAL BACKGROUND**

Angelo Gregory-Rivas (hereinafter referred to as the "Plaintiff")spent five years as a special education student within the District of Columbia Public Schools System (hereinafter the "DCPS), and was identified as learning disabled and emotionally disturbed. A Psycho-educational evaluation completed in April 2005 noted the following scores: word reading: 9.8; Reading Comprehension: 4.4; psuedoword decoding:›12.9; numerical operations:5.8; math reasoning 5.4; spelling:8.8; and written expression: 10.4. *See Administrative Record at 110-113.* Angelo desired to attend college and major in Business Administration. *See AR. at 128.* At the conclusion of the Fall 2005 semester at the University of the District of Columbia (hereinafter referred to as UDC), Angelo was placed on academic probation because of his cumulative grade point average, a 1.667. Angelo ended the school year by flunking out of the University of the District of Columbia for the 2005-2006 academic school year. *See UDC Transcript attached as Exhibit 1*.

In November 2004, Counsel for Angelo filed a hearing request alleging, among other things, the failure of DCPS to develop an appropriate and current Individualized Education Plan for the current school 2004-2005 school year. ***See Complaint Exhibit 1***. Angelo, among other things, requested compensatory education for DCPS' failure to provide him with access to a free and appropriate education. *Id*. In lieu of a hearing on the merits, DCPS entered into a settlement agreement wherein DCPS, inter alia, agreed to convene a MDT meeting to address the issues raised in the November 2004 hearing request. ***See Comp. Exhibit 2.*** When DCPS' failed to convene the MDT meeting as agreed, a January 2005 hearing request was filed and subsequently, DCPS entered into a second settlement agreement in February 2005, once again agreeing to convene a MDT meeting to discuss compensatory education, to review and revise the IEP and transfer parental rights to Angelo. ***See Compl. Exhibit 4***. DCPS once again failed to adhere to the terms of the second settlement agreement and as a result thereof Angelo's counsel was forced to file a May 18, 2005, hearing request and an amended the June 14, 2005 hearing requests alleging that DCPS' denied FAPE and continued to request relief in the form of compensatory education. ***See Compl. Exhibit 6 &7.***

At the June 24, 2005 Due Process hearing, counsel for Angelo alleged that DCPS' failed to convene a MDT meeting and discuss Angelo's need for compensatory education. ***See AR at 38.*** DCPS argued that the matter should be dismissed because Angelo had recently graduated from high school, receiving a high school diploma. *Id*. After discussion of the matter, the hearing officer requested each party to brief the issue and continued the matter for adjudication at a later date. *Id*. After the August 15, 2005 hearing, the hearing officer issued a hearing officer's HOD stating, among other things, the following: "(1) that within thirty (30) calendar days of the issuance of this Order,

[DCPS] shall convene a MDT meeting to discuss and determine the amount of compensatory education services [Angelo] is due and develop a compensatory education plan." *See AR. at 42-46.* When DCPS failed to convene the meeting, counsel for Angelo simultaneously, forwarded a September 22, 2005 letter to the Office of Mediation and Compliance concerning the DCPS' non-compliance with the August 29th, 2005 HOD and filed another administrative due process hearing request. *See AR at 58-60.* After a series of letters referencing Angelo's attempts to convene the ordered MDT meeting, the Defendant agreed to hold the meeting on November 30, 2005, a day before the scheduled December 1, 2005 hearing. *See AR. at 66, 72, 77, 91, 95, 100.* None of Angelo's teachers attended the November 30, 2005 MDT meeting, notwithstanding, the convening of an inappropriate team, Angelo and his educational advocate participated. *See AR. at 136-138.*

Even though Angelo had an IEP that required twenty-two hours and one half (22.5) of specialized instruction, Sonya Lee, the special education coordinator, acknowledged that it had only provided specialized instruction in the area of World Government. *See AR. at 136-139.* The Defendant argued that Angelo could have gone to his case manager if he needed assistance. *Id.* The educational advocate noted that because Angelo's IEP had been drafted to include twenty-two and one half hours (22.5) of specialized instruction, he was entitled to receive specialized instruction for the same amount of time. *See AR at 140.* The educational advocate explained that Angelo still needed assistance as he still had academic weaknesses as evident in his recent evaluation. *See AR at 141-142.* The educational advocate further noted that although Angelo was taking electives, this did not, in any way, vitiate DCPS' responsibility to implement his IEP, as written. *Id.* With Angelo and the educational advocate disagreeing, the inappropriately constituted MDT team determined that Angelo did not require compensatory education services. *See AR. at 139.*

In the December 2005 HOD, the hearing officer determined that the Angelo did not require compensatory education services to redress DCPS' failure to provide access to a free and appropriate education. He opined that (1) Angelo's ability to obtained a high school diploma evinced his ability perform "adequately in general education", and (2) that the August 2005 HOD did not specify the amount of hours due to Angelo and therefore left opened the question of whether Angelo was due any compensatory education services at all. ***See AR. at 2-9.***

The Plaintiff in this matter respectfully request that this Honorable Court reverse the order and remand the case to the Hearing Officer that presided over the August 2005 hearing to hear testimony on the amount of compensatory education hours due to Angelo and draft an award in accordance with *Reid v. Dist. of Columbia*, 401 F.3D 516 (D.C. 2005).

## II. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party is entitled to judgment as a matter of law and no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable factfinder could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Facts and inferences drawn from those facts must be viewed in the light most favorable

to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, summary judgment may still be granted if evidence favoring the non-moving party is merely colorable, or is not significantly probative. *Anderson*, 477 U.S. at 249-50.

Once the movant files a proper summary judgment motion, the burden shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 250. For a non-moving party to establish that a genuine issue for trial exists, it must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co.* 475 U.S. at 586.

### III. JUDICIAL REVIEW OF AN ADMINISTRATIVE DECISION UNDER IDEIA

A party aggrieved by the findings and decisions rendered during the administrative due process proceedings is entitled to bring forth a civil action in either a state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415 (i)(2). The reviewing court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines to be appropriate." 20 U.S.C. § 1415 (i)(2); 34 C.F.R. §305.512(b)(3). The applicable standard of review requires that "a party challenging [an] administrative determination must [shoulder] the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so." *See Kerkam v. McKenzie*, 862 F.2d 884, (D.C. Cir. 1989) ("*Kerkam I*"). Thus, an administrative determination "without reasoned and specific findings deserves little deference." *See Kerkam v. Superintendent*, D.C. Pub. Schs., 931 F. 2d 84, 87 (D.C. Cir. 1991) ("*Kerkam II*"). In interpreting "the preponderance standard of review", the Supreme Court noted in *Rowley*, that it is not a review that equates into an "unfettered

de novo review". *See Board of Educ. Hendrick Hudson Central School Dist. Westchester County v. Rowley*, 458 U.S. at 206, 102 S. Ct. 3034; Courts must give administrative proceedings "due weight,"(*see also Simmons v. District of Columbia*, 355 F.Supp 2d. 12 (D.D.C 2004)) and [f]actual findings from administrative proceedings are considered prima facie correct." *Id.* (Quoting *S.H. v. State Operated Sch. Dist. of the City of Newark*, 336 F. 3d 260, 270 (3d Cir. 2003)). Courts may not substitute their own views for [that] of the hearing officer, (*id.* at *Rowley* 206; *see also Argueta v. Government of the District of Columbia,* 355 F. Supp. 2d. 408 (D.D.C 2005)*; Shaw v. Dist of Columbia*, 238 F. Supp. 2d 127, 135 (D.D.C. 2002)), and a court upsetting a hearing officer's decision "must a least explain its basis for doing so." *District of Columbia v. Ramirez* , 355 F.Supp. 2d. 63 (D.D.C 2005). Consequently, when neither party seeks to supplement the administrative record with additional evidence, a motion for summary judgment will operate as a motion for judgment based on the evidence of record. 20 U.S.C. § 1415(i)(2)(B); *Id.* at *Ramirez,* 355 F.Supp. 2d. 63 (D.D.C  2005).

### IV. ARGUMENT

In the December 2005 HOD, the hearing officer concluded that because the August 2005 HOD did not award the Angelo with a specified amount of compensatory services hours that left open the possibility of the MDT team to state there were no to be provided. **See AR. at 2-9.** The HOD further reasoned that because Angelo desired to obtain a high school diploma this waived the district's obligation to provide specialized instruction in his courses.  He supported this contention by stating that Angelo's high school transcript evinced his ability to perform adequately in general education courses and that the student had the right to take electives instead of special education courses. *Id.* The Hearing Officer erred in his December 2005 HOD because: 1) he failed to determine whether DCPS violated the August 2005 HOD which determined Angelo's eligibility for compensatory

education; and 2) when he decided the issue concerning Angelo's entitlement to compensatory education services, which had been previously decided by the August 2005. *Id.*

### A. THE HEARING OFFICER'S FAILED TO RULE ON THE ISSUE OF DCPS' FAILURE TO COMPLY WITH THE AUGUST 2005 HOD.

Hearing Officer's Banks erred when he failed to determine DCPS' failure to comply with an August 2005 HOD that ordered DCPS to convene a MDT meeting within in thirty (30) days to discuss and determine the amount of compensatory education services due and develop a plan. *See AR. at 42-49.* In *Blackman v. Dist. of Columbia*, the Court found that "compensatory education is an important mechanism for addressing the loss of services [due to DCPS' ] failure to receive the timely implementation of HOD's and Sas." *See Blackman v. Dist. of Columbia*, WL 2456413 (D.D.C 2006).

Counsel for Angelo argued that Angelo had been denied FAPE due to DCPS' failure to comply with the August 2005 HOD that required DCPS to meet within thirty days (30) to discuss and develop a compensatory education. *See AR. at 10-16.* Since November 2004, Angelo and the Defendant entered into no less than three settlement agreements and a August 28, 2005 HOD, all of which purported to represent a resolution of all special education issues affecting Angelo. When the Defendant failed to convene the MDT meeting within thirty days to develop Angelo's compensatory education plan, the Defendant was in violation of the August 2005 HOD. This resulted in the filing of an October 2005 due process hearing request which culminated into the December 2005 HOD. The failure of the Hearing Officer to make a finding in the December 2005 HOD regarding DCPS' failure to comply with the August 2005 HOD warrants reversal and remand. *See Compl. ¶'s at 10-14 & 21-28.*

In *Serpas v. Dist. of Columbia*, this Court remanded the student's claim because the hearing officer failed to address the issue of reimbursement for independent evaluations, noting that when reviewing IDEA administrative proceedings, a court is to afford "some deference to the expertise of the hearing officer and school officials responsible for [a] child's education", however that deference of expertise is devoid when hearing officers fail to address the issues presented before them. *See Serpas v. Dist of Columbia*, WL 3211604 (D.D.C. 2005).

### B. THE "LAW OF THE CASE DOCTRINE" PROHIBITED THE HEARING OFFICER FROM RE-LITIGATING ANGELO'S ENTITLEMENT TO COMPENSATORY SERVICES.

The Hearing Officer erred when he decided the issue of Angelo's entitlement to compensatory education services because that issue had been previously decided by the August 2005 HOD. ***See AR. at 2-9; 42-45.*** The August 2005 HOD ordered DCPS to convene a MDT meeting within in 30 days to discuss and determine the amount of compensatory education services due and develop a plan. *Id.* The "Law of the Case" is a doctrine of judicial economy that forestalls a court from reconsidering a question of law previously decided by a court of coordinate jurisdiction. "Where it is not apparent from the record that the prior ruling constituted a final disposition of an issue. . . the doctrine must be called into question." *Schroeder v. Weinstein*, 585 A. 2d 1382 (D.C. 1991); *Sowell v. Walker*, 755 A.2d 438 (D.C. 2000). In addition, . . . "the law of the case doctrine describes a general practice of the courts that dispenses with need to consider what has already been decided." *Karr v. Brown & Associates, Inc.*, 567 A.2d 1306 (D.C. 1989). Thus, [i]n order to become the law of the case, an issue must have been considered and decided by the first court, expressly or by necessary implication." *Id.* The "law of the case" doctrine is applicable when: "1) the prior ruling has 'sufficient finality'; and

2) the earlier ruling is not clearly erroneous considering any new facts or a change in substantive law." (Quoting *Kritsidimas v. Sheskin*, 411 A.2d 370, 372 (D.C. 1980).

In this instant matter, Angelo had previously requested a hearing officer to decide the issue of his entitlement to compensatory education services. At the August 2005 hearing, the hearing officer determined that DCPS had not sustained its burden of proof and thusly ordered DCPS to convene a MDT meeting to discuss and determine the amount of compensatory education services required and develop a compensatory plan. ***See AR. at 42-45*** . The first prong of the "law of the case" doctrine was satisfied because the August 28th, 2005 HOD represented a final resolution to the issues presented in the May 18th, 2005 and the amended June 24th, 2005 hearing requests. ***See Compl. at 10-14*** . When the Court of Appeals decided *Reid v. District of Columbia*, Hearing Officers were put on notice that they were required to determine whether a child who had been denied access to FAPE had any entitlement to compensatory services. *See Reid v. Dist. of Columbia*, 401 F.3D 516 (D.C. 2005). The August 2005 HOD was not clearly erroneous as no new facts were educed and there no changes to the substantive law. The August 2005 HOD satisfied the second prong and should stand. Because the August 2005 HOD was final, the Hearing Officer who presided over the December 2005 hearing could not have made a finding incongruous with the findings made in the August 2005 HOD.

The Hearing Officer who authored the August 28, 2005 HOD had already determined Angelo's entitlement to compensatory education, the "law of the case" doctrine dictate that the issue of entitlement to compensatory education should not have been re-adjudicated in the December 2005 administrative proceeding. The Hearing Officers are tantamount to courts of coordinate jurisdictions, each having the identical adjudicatory authority and discretion as the other. Thus, if there was an issue relative to the August 28, 2005 HOD, then the matter should have been certified to the hearing

officer that presided over the August 2005 hearing for clarification and/or to make an appropriate determination consistent with his earlier ruling.

### C. THE HEARING OFFICER ERRED WHEN HE FAILED TO AWARD ANGELO COMPENSATORY EDUCATION HOURS.

Should this Honorable Court decide that the "law of the case" doctrine is inapplicable, this Court should determine that Angelo proved his case beyond a preponderance of the evidence. The Hearing Officer's interpretation of *Reid* and his application thereof to the facts of the case is fatally and inherently flawed. Further, the three prong standard enunciated by the Hearing Officer in denying Angelo compensatory education services does not find traction within the four corners of *Reid*. Moreover, the Court in *Reid* clearly stated that in fashioning a remedy for compensatory education services, an award must be tailored to the specific and unique needs of the individual. See *Reid*, supra.

Once he determined that Angelo was entitled to compensatory education services, the hearing officer ordered the MDT team to convene to discuss/determine and develop a compensatory education plan. The MDT disagreed with Angelo and the educational advocate and decided not to develop a compensatory education plan as ordered. ***See AR. at 136-142***. To support his decision to deny compensatory education hours to Angelo, the Hearing Officer in the December 2005 HOD found that Angelo's decision to graduate from high school and to obtain his high school diploma evinced that the DCPS provided Angelo with FAPE. The hearing officer also concluded that Angelo's transcript "evinces his ability to perform adequately in general education courses and that at nineteen [Angelo] had the legal authority to decide to take electives toward graduation rather than special education courses. He then noted that Angelo graduated with passing grades in general education and special

education courses. *Id.* During the hearing he stated: "You're here complaining that [Angelo]'s having trouble at UDC because of services [Angelo] didn't get, i.e. specialized instruction. But if [Angelo had] gotten specialized instruction, wouldn't have gotten a diploma and he wouldn't be able to go to UDC, anyway." *See AR. at 192*. However, the findings and conclusions of the Hearing Officer are flat out wrong as "[i]t is not enough for a district to create a procedurally adequate IEP[. . .,] [a] district must fully implement the specified instruction and related services to ensure a student with disabilities receive FAPE." See *Argueta v. Dist. of Columbia*, 42 IDELR 268, (D.C. 2005). Unfortunately for Angelo, that did not happen here. Further, the purpose of special education is to ensure that all children with a disability have access to a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living. See 20 USC 1400 (d). Thus, "a student's decision to graduate with a regular high school diploma does not automatically relieve a school district of its responsibility to provide the student with compensatory education and related services ..." See *Letter to Riffel*, 34 IDELR 292, (OSEP August 22, 2000); see also *Appleton Area School Dist. v. Benson*, 32 IDELR 91 (E.D. WI 2000)(authorizing award of compensatory education to a student who graduated with a regular high school diploma.); see also *School Comm. of Town of Burlington v. Department of Educ.*, 471 U.S. 359, 369-70, 105 S.Ct. 1996, 2002-03 (1985). Therefore, Angelo's desire and subsequent graduation, in keeping with IDEIA, did not relieve DCPS of its statutory responsibility to assist Angelo in obtaining the education to which he was entitled and also in becoming a productive member of society.

Consequently, the hearing officer's failure to award Angelo compensatory education services resulted in reversible error as 34 CFR 300.121 states that "each state shall ensure that FAPE is

available to any individual child with a disability who needs special education and related services, even though the child is advancing from grade to grade. See 34 CFR 300.121(2004). Angelo's decision to pursue a course of study that would enable him to graduate with a regular high school diploma did not relieve the district of its obligation to provide FAPE when it failed to implement his IEP during the time he attended Wilson Senior High School.

The Hearing Officer further erred because he claimed that Angelo failed to a meet a three-prong test he claims that had been set out in *Reid*. See *Reid*, supra. Specifically he claimed that Angelo had the burden of showing that (1) that as a result of DCPS' violation of IDEA, he suffered an educational deficiency, (2) that but for the violation, he would have progressed to a certain academic level, and (3) that there exists a type and amount of compensatory education services that would bring him to the level he would have been [but] for DCPS' violation." ***See AR at 2-9 .***

Notwithstanding the fact that *Reid* only stands for the proposition that compensatory education awards must not derived on a "cookie-cutter" basis, but must be derived in accordance with the purpose of special education- it must be based on a student's unique needs. In its reasoning, the Court reiterated that the premise of special education services were to designed and develop educational services for children based on their unique needs and as such a compensatory education award had to operate in the same manner. *Id*. Therefore, any award had to be designed to consider that child's unique needs and "must be reasonably calculated to provide the educational benefits that likely would have occurred but for the schools failure to provide such services. See *Reid*, supra. Compensatory education awards should be designed to restore children with special education needs in the same position they would have occupied but for the school district failing to adhere to the provisions of IDEA (reauthorized as Individuals with Disabilities Education Improvement Act of 2004).

The record is clear that in this case, Angelo had been denied specialized instruction for quite some period of time as demonstrated through his testimony. *See AR. at 212-221.* He discussed how he failed the placement test at the University at the District of Columbia (UDC) and had to be placed in remedial courses and as of that moment he had been performing unsatisfactorily at UDC. *See AR. at 212-213.* He noted that he would not be able to move forward in college courses until he obtained satisfactory grades in his remedial courses. *Id.* He testified that he had not received specialized instruction in either English or reading and that he never refused help. *Id. at 215.* A fact supported by his high school transcript and April 2005 psycho-educational, which points out that as of Angelo's senior year he was performing at least three and seven years below grade level. *See AR. at 110-113.*

Additionally, he noted that while attending Wilson Senior High School, other than U.S. Government and Spanish, he had not received specialized instruction in of his other courses. *See Id. at 216.* This statement was supported through the testimony of Sonya Lee, the special education coordinator, who also noted that Angelo had an IEP that required twenty-two and one half hours (22.5) of specialized instruction but that Angelo only received specialized instruction in World Government and Spanish. *See AR. at 196.* Angelo also noted that he had not received any guidance with regards to the selection of his courses and how those courses would affect his ability to obtain a high school diploma. *See Id. at 220.*

The hearing officer erred in determining that Angelo had not met his burden regarding his entitlement to compensatory education. Compensatory education services are considered an equitable remedy and are awarded to remedy a "past denial of educational and related services not originally provided." See *Letter to Riffel*, supra,(noting that where a student has been denied FAPE and not been provided with the services listed in his/her individualized education program). Testimony of

the special education coordinator noted the unavailability of service related logs or IEP report cards, documents, both of which would demonstrate the implementation of Angelo's IEP. *See AR. at 201-202*. Additionally, she could not explain why Angelo had not received specialized instruction in his electives nor why Angelo did not have dually certified teachers in his courses as well. *See AR. at 202-205*. In the totality of the circumstances, it is clear beyond a preponderance of the evidence that Angelo had been denied FAPE. Moreover, because a determination of FAPE rests on whether a student had access to specialized instruction and related services which would have made learning possible, the hearing officer should have determined through testimony, lack of service related logs, and IEP reports that none of the services listed on Angelo's IEP had been provided.

## IV. CONCLUSION

As the Hearing Officer erred in failing to rule on DCPS' failure to comply with the August 2005 HOD and further failed to determine that DCPS denied Angelo access to a free and appropriate education, this matter should be certified back the original hearing officer who presided over the August 2005 hearing.

Respectfully submitted,

_____/s/_____
Roxanne D. Neloms [478157]
Domiento C.R. Hill [ 496256]
James E. Brown & Associates, PLLC
1220 L. Street, NW, Suite 700
Washington, DC 20005
(202)742-2000 (Tele.)
Counsel for Plaintiffs