UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ANGELO GREGORY-RIVAS,                )

    Plaintiff,                            )

           v.                       )   Civil Action No. - 06-563 (HHK)

DISTRICT OF COLUMBIA, *et al.,*        )

    Defendants.                          )
_____

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' <u>CROSS MOTION FOR SUMMARY JUDGMENT.</u>

The Defendants, by and through counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby respectfully move this Court to grant summary judgment in their favor in the captioned action and to deny the plaintiff's motion for summary judgment. As established by the administrative record and the accompanying supporting memorandum and the statement of material facts as to which there is no genuine dispute, the challenged administrative determinations under the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. §1400 *et seq.* were entirely appropriate.

                                  Respectfully submitted,

                                    LINDA SINGER
                                    Acting Attorney General for the District of Columbia

                                    GEORGE C. VALENTINE
                                    Deputy Attorney General, Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor North
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625
E-mail – maria.merkowitz@dc.gov

January 18, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ANGELO GREGORY-RIVAS,                    )

    Plaintiff,                           )

                v.              )  Civil Action No. - 06-563 (HHK)

DISTRICT OF COLUMBIA, *et al.,*          )

    Defendants.                          )
_____


**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**


<u>**INTRODUCTION AND BACKGROUND**</u>

      This action seeks review of a decision issued on December 23, 2005, by an

administrative Hearing Officer following a hearing conducted pursuant to the Individuals

With Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1400 *et seq.*

("IDEIA"), on December 1, 2005.  In his decision, the Hearing Officer determined that

the plaintiff failed to meet his burden of proving that compensatory education was

warranted, and dismissed the Due Process Complaint.

      At the time of the hearing, the plaintiff was a twenty year old student who had

already graduated from Wilson Senior High School with a high school diploma in June

2005, and was attending the University of the District of Columbia. (AR at 43, 142)  On

October 3, 2005, the plaintiff filed a Due Process Complaint alleging that the District of

Columbia Public Schools ("DCPS") denied the plaintiff a free appropriate public

education ("FAPE") by failing to comply with an earlier Hearing Officer's Decision ("HOD") issued on August 29, 2005, subsequent to a due process hearing held on August 15, 2005. (AR at 23, 29)

The relevant issue presented to the Hearing Officer ("HO") at the August 15, 2005, hearing was whether DCPS had complied with a February 16, 2005, settlement agreement wherein, among other things, DCPS agreed to convene an MDT/IEP meeting to review the student's evaluations, revise and update his IEP, discuss compensatory education, placement and the student's transfer of rights.  (AR at 43) While the meeting was held there was no discussion of compensatory education.  (AR at 43)  Accordingly, the Hearing Officer determined that DCPS did not sustain its burden of proof.  "The settlement agreement reached by the parties explicitly required the MDT to discuss compensatory education at the MDT meeting.  DCPS' witness clearly indicated there was no such discussion at the meeting."  (AR at 44) (Emphasis added)  Thus the Hearing Officer ordered DCPS to convene a Multidisciplinary Team ("MDT") Meeting within thirty days of the issuance of the HOD – August 29, 2005, "to discuss and determine the amount of compensatory education the student is due and develop a compensatory education plan."  (AR at 45)  (Emphasis added)  The Hearing Officer did not make a determination that any compensatory education was due, only that the MDT team should make that determination.  No appeal was taken from this HOD.

An MDT meeting was convened on November 30, 2005, at which time the MDT team determined that the plaintiff was not entitled to compensatory education.  (AR at 136-139)

At the December 1, 2005, due process hearing, plaintiff argued that he was entitled to compensatory education because the August 29, 2005 HOD ordered DCPS to develop a compensatory education plan and because his most recent psycho-educational evaluation and his need to take remedial courses at the University of the District of Columbia ("UDC") demonstrated his need for compensatory education services.  (AR at 5)

After hearing testimony and evaluating the evidence, the HO concluded that the August 29, 2005, HOD "did not specify that Petitioner receive compensatory education services, but that the MDT should 'discuss and determine the amount of compensatory education the student is due,' leaving open the possibility that none was due."  (AR at 5) The HO further concluded that plaintiff was not owed any compensatory education services because he "elected to take regular education electives to assure his timely graduation rather than to avail himself of specialized instruction and delay his graduation," and because he chose not to attend counseling services.  (AR at 6)  The HO further concluded that the MDT's decision not to award compensatory education did not constitute a denial of a FAPE because "[f]irst[,] Petitioner's transcript evinces his ability to perform adequately in general education courses.  Second, as a nineteen year-old, Petitioner had the legal authority to decide to take electives toward graduation rather than special education courses.[1] Third, Petitioner did, in fact graduate with passing grades in general education and special education courses."  (AR at 6)

Plaintiff alleges that the HOD should be overturned because of two alleged errors: (1) the HO failed to determine whether DCPS violated the August 2005, HOD and, (2)

---

[1] 5 DCMR Section 3023.1(b).

the HO should not have made a determination concerning the student's eligibility for

compensatory education.

## ARGUMENT

### 1.    The criteria for granting summary judgment

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary

judgment if no genuine issue of material fact exists and the moving party is entitled to

judgment as a matter of law.  Material facts are those "that might affect the outcome of

the suit under the governing law." Farmland Industries, Inc. v. Grain Board of

Iraq, 248 U.S. App. D.C.  276, 904 F. 2d 732, 735 (1990)(citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986)).[2]

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . .
> against a party who fails to make a showing sufficient to establish the existence of an
> element essential to that party's case, and on which that party will bear the burden of
> proof.
>
> Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[3]

---

[2] Anderson v. Liberty Lobby, Inc, supra, 477 U.S. at 248, similarly describes the rule for determining
materiality:

As to materiality, the substantive law will identify which facts are material. Only disputes over
facts that might affect the outcome of the suit under governing law will properly preclude the entry of
summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. . . Any proof or
evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality
is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and
not a criterion for evaluating the evidentiary underpinning of those disputes.

[3] Celotex Corp. v. Cantrett, supra, is one of three cases decided by the U.S. Supreme Court in 1986 that
govern the standard for granting motions for summary judgment.  Celotex Corp., supra;  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Company v. Zenith Radio
Corporation, 475 U.S. 574 (1986). Celotex Corp. held that Rule 56 was to be administered with due regard
to those opposing claims, as well as those advancing them, and that the purpose of the Rule was to dispose
of claims that had no reasonable factual basis. 477 U.S. at 327, 323. Anderson held that the determination
of whether a given factual dispute requires submission to a jury must be guided by the substantive
evidentiary standards that apply to the case. 477 U.S. at 248, 254.  Matsushita held that where the record
taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine
issue for trial." 475 U.S. at 587.

. . . [T]aken together, these three cases signal to the lower courts that summary judgment
can be relied upon more so than in the past to weed out frivolous lawsuits and avoid
wasteful trials and lower courts have responded accordingly.

To meet the initial burden of showing "the absence of a genuine issue of material fact" on an essential element of the non-movant's case, the movant may demonstrate that the respondent has no evidence to support an essential element of his or her case. <u>Street v. J.C. Bradford & Co</u>., 886 F.2d 1472, 1479 (6th Cir. 1989). In answer, the respondent must "present affirmative evidence" in order to defeat the motion, and "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion for summary judgment should be granted. <u>Id</u>.

## 2. The criteria for review of administrative decisions under IDEA

IDEA provides for judicial review in state or federal court to "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing. 20 U.S.C. §1415(c). In conducting such review, the reviewing court "shall receive the records of the administrative proceeding, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. §1415(e). However, the "preponderance of the evidence" standard "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review." <u>Board of Education of Hendrick Hudson Central School Dist. v. Rowley</u>, 458 U.S. 176, 206 (1982).

The party challenging the hearing officer's determination bears the burden of persuading the court that the Hearing Officer was incorrect. <u>Angevine v. Smith</u>, 959 F.2d 292, 295 (D.C. Cir. 1992); <u>Kerkam v. McKenzie</u>, 862 F.2d 884, 887 (D.C. Cir. 1988); <u>Lyons v. Smith</u>, 829 F.Supp. 414, 417 (D.D.C. 1993). While the Court is authorized to

---

10 A. Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2727, n. 25 (1998).

make an independent determination, the Court "must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." Lyons v. Smith, *supra*, 829 F.Supp. at 418.

Accordingly, before this Court may reverse the Hearing Officer's decision, the Plaintiffs must show by a "preponderance of the evidence," giving the Hearing Officer's finding "due weight," that the Hearing Officer was wrong.

      **3.**      **Any failure by DCPS to comply with the August 2005, HOD was at most a procedural violation that did not constitute a denial of FAPE.**

Plaintiff alleges that the HO erred when he failed to make a determination concerning DCPS' failure to comply with the August 2005, HOD ordering DCPS to convene an MDT meeting within 30 days of the issuance of the HOD. (AR at 7) While it is true that the HO did not specifically rule on whether DCPS had timely complied with the August 2005, HOD, he was completely aware of when it was held -- November 30, 2005, -- as noted in his Findings of Fact. (AR at 5)

The HO further had evidence of attempts by DCPS to convene the meeting at an earlier date. The HOD was issued on August 30, 2005. Accordingly, DCPS should have convened an MDT meeting by September 29, 2005. Evidence presented to the HO indicates that a Letter of Invitation was sent to plaintiff's counsel on October 6, 2005, proposing three dates for the MDT meeting. Plaintiff's counsel was unavailable on all three dates. (AR at 61, 66) Subsequent Letters of Invitation were sent to Plaintiff's

counsel on October 11, November 4, and November 14, 2005. Both parties ultimately agreed to the date of November 30, 2005. (AR at 61-102).[4]

While it is true that DCPS did not strictly adhere to the time frame set forth in the HOD, given DCPS' attempts to set up a meeting, the plaintiff's unavailability, the fact that the hearing was conducted prior to the December 2005, due process hearing and the HO was aware of the MDT team's decision concerning compensatory education, the fact that the HO failed to make a specific ruling is of no consequence. At most, the HO could have found that DCPS committed a procedural violation, but that that procedural violation did not constitute a denial of FAPE, as there was no showing at the hearing of any educational harm to the student by the delay of when the MDT should have taken place and the time that it did take place.

> "[A]n IDEA claim is viable only if [the alleged] procedural violations affected the student's substantive rights. *See, e.g., Kruvant v. District of Columbia,* 99 Fed. Appx. 232, 233 (D.C. Cir. 2004) (denying relief under IDEA because' although DCPS admits that it failed to satisfy its responsibility to assess [the student] for IDEA eligibility within 120 days of her parent's request, the [parents] have not shown that any harm resulted from that error'); *C. M. v. Bd. Of Educ.,* 128 Fed. Appx. 876, 881 (3d Cir. 2005) (per curiam) ('[O]nly those procedural violations of the IDEA which result in loss of educational opportunity or seriously deprive parents of their participation rights are actionable.'); *M.M. ex rel. D.M. v. Sch. Dist.,* 303 F.3d 523, 533-34 (4th Cir. 2002) ('If a disabled child received (or was offered) a FAPE in spite of a technical violation of the IDEA, the school district has fulfilled its statutory obligations.'); *W.G. v. Bd. Of Trustees,* 960 F.2d 1479, 1484 (9th Cir. 1992) (rejecting the proposition that procedural flaws 'automatically require a finding of a denial of a FAPE'); *Thomas v. Cincinnati Bd. Of Educ. V. Denton,* 895 F.2d 973, 982 (4th Cir. 1990) (refusing to award compensatory education where procedural faults committed by Board did not cause the child to lose any educational opportunity)." *Lesesne v. District of Columbia,* 447 F. 3d 828 834 (D.C. Cir. 2006). *See also Razzaghi v. District of Columbia,* Civ. No. 03-1619 (D.D.C. 9/28/2005) (Mem. Op. at 16).

---

[4] Plaintiff cancelled a scheduled November 22, 2005 meeting. (TR at 5)

4.      __The "Law of the Case Doctrine" is inapplicable to the case at hand.__

Plaintiff is mistaken when he claims that "[t]he Hearing Officer erred when he decided the issue of Angelo's entitlement to compensatory education services because that issue had been previously decided by the August 2005 HOD."  (Pl's Motion at 8) Contrary to plaintiff's assertion, the issue of entitlement to compensatory education had *not* been decided.  The August 2005 due process hearing concerned defendants' failure to comply with a settlement agreement to <u>convene</u> a timely MDT meeting <u>to discuss</u> compensatory education. (AR at 42-45) The HO, in his decision issued August 29, 2005, simply found that "DCPS did not sustain its burden of proof.  The settlement agreement reached by the parties explicitly required the MDT to <u>discuss</u> compensatory education at the MDT meeting.  DCPS' witness clearly indicated there was no such discussion at the meeting." (AR at 45)  (Emphasis added)  Accordingly, the HO ordered DCPS to convene the MDT meeting.  (AR at 45)

Plaintiff here argues that the "law of the case" doctrine is applicable because the issue of his entitlement to compensatory education had been raised previously and the HO, at the August 2005 hearing, "determined that DCPS had not sustained its burden of proof and thusly ordered DCPS to convene a MDT meeting to discuss and determine the amount of compensatory education services required and develop a compensatory plan." (Pl's motion at 9)  However, other than ordering DCPS to convene an MDT meeting to discuss compensatory education, there has never been a finding or ruling on how much compensatory education, if any, was owed to the plaintiff.  Thus the "law of the case" doctrine is inapplicable to the facts at hand.

**5.  The Hearing Officer Did Not Err when He Denied Plaintiff
Compensatory Education.**

The only issue before the HO at the December 2005, due process hearing was
whether or not DCPS had complied with the August 2005 HOD.[5] Recognizing this, the
HO appropriately questioned plaintiff's counsel as to how he was going to establish how
much compensatory education the student was entitled to, even if a violation of the prior
HOD was proven. (Tr. At 19) When plaintiff's counsel responded that he would do so by
showing the difficulties the student is currently experiencing at UDC, which is allegedly
the result of a failure to implement an IEP of the student, the HO again correctly
emphasized that the only award of compensatory education he could make was that
which resulted from any violation of the August 2005, HOD.  (TR at 19-20)

Further, as expressed by plaintiff's counsel at the hearing, plaintiff was not
seeking an award of compensatory education at the due process hearing, but for an MDT
meeting to be convened within five days, and if such a meeting was not convened that the
student "be issued, as compensatory education automatically, a laptop computer;
appropriate educational software, which would include, at a minimum, windows XP,
Office XP, Microsoft Student 2006; and that he receive 2,000 hours of tutorial services."
(TR at 15)

The evidence at the December 2005, due process hearing established that a
meeting was held on November 30, 2005, to discuss the student's entitlement to
compensatory education.  (TR at 48)  At that meeting it was determined that the student
was not owed any type of compensatory education, "either by specialized instruction or
related services."  (TR at 48)  The decision was based on the fact that Wilson Senior High

---

[5] "[W]hat we're here to deal with is a violation of the last HOD".  (TR at 19)

School, the student's neighborhood school, had provided plaintiff with "specialized instruction with special-ed teachers according to his IEP and based on encounter tracking forms from the social worker indicating [the student] was never available for counseling and he [refused] counseling several times."  (Tr. at 48, 42)

Additionally, the evidence produced at the due process hearing established that the student always wanted to graduate from high school with a diploma, as opposed to a certificate of attendance, and that he indeed graduated from high school with a diploma. (TR at 42)  Had the student taken specialized instruction, rather than the courses he took, he would have been unable to receive a diploma and "his graduation would have been delayed" (Tr. at 42, 44), something the student did not want. (Tr. at 40)

Further, a review of the classes the student attended while at Wilson High School reveals that the majority were taught by teachers who were dually certified in the subject matter and in special education, such that while the student was not specifically attending a special education class, (which would not have provided him with credits towards graduation), he was being taught the needed subject matter by a teacher who was also certified in special education. (AR at 137)  Further, in his senior year, the student received 10 to 15 hours in specialized instruction in one class—U.S. Government—and was taught Spanish by a dual certified special education teacher, thus adding to the number of specialized instruction hours he received.  (AR at 137, TR at 49, 51, 53) The elective classes the student chose to take in order to timely graduate were monitored by the special education teacher for those classes.  (TR at 49, 60)

It was further established that some of the student's poor grades received while attending high school may have been the result of his not attending classes on a regular

basis (TR at 40), of his being "real lazy" one year (AR at 137), or because of his behavior.  (AR at 127)

While plaintiff claims that plaintiff is entitled to compensatory education at this time because he has been performing unsatisfactorily at UDC, where he is currently enrolled, plaintiff has failed to establish that his poor performance was the result of any violation of FAPE between September 29, 2005, the date the MDT should have taken place, and November 30, 2005, the date it did take place.  As the record reflects, the student was capable of attending and passing regular education classes and receiving a high school diploma.  The record further reflects that there were times when the student was "lazy," when he didn't attend classes or counseling sessions, or when his behavior impacted on his learning.  To say that plaintiff is doing poorly at UDC currently because of something DCPS did or did not do prior to his graduation, is purely speculative.  For the reasons stated above, the HOD should be affirmed and the Complaint dismissed.

Respectfully submitted,


LINDA SINGER
Acting Attorney General for the District of Columbia


GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division


/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor North
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625
E-mail – maria.merkowitz@dc.gov

January 18, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ANGELO GREGORY-RIVAS,                    )

     Plaintiff,                                 )

            v.                         )   Civil Action No. - 06-563 (HHK)

DISTRICT OF COLUMBIA, *et al.,*          )

     Defendants.                                )
_____

## **DEFENDANTS' STATEMENT OF DISPUTED MATERIAL FACTS**

1-6.    Defendants dispute plaintiff's material facts numbered 1-6. These material facts are taken from plaintiff's Complaint and do not contain any reference to the record as required by LCvR 66.1.

7.    Defendants dispute plaintiff's material fact numbered 7.  The student's IEP dated May 4, 2004, provided that the student receive 22.5 hours of specialized instruction and 1.5 hours of counseling for a 10 month period of time.

8.    Defendants do not dispute material fact numbered 8.

9.    Defendants do not dispute that part of material fact numbered 9 stating that Angelo was on a diploma track, but find no evidence in AR 114-132 that a transition plan would be developed after a vocational evaluation was completed.

10.    Defendants do not dispute material fact numbered 10.

11.    Defendants dispute material fact numbered 11 because there is no evidence to support the alleged fact in AR 114-132.

12.-14. Defendants dispute plaintiff's material facts numbered 12-14. These material facts are taken from plaintiff's Complaint and do not contain any reference to the record as required by LCvR 66.1.

15.-18. Defendants do not dispute material facts numbered 15 and 16.

19.-20. Defendants dispute material facts numbered 19-20 because there is no evidence to support the alleged facts in AR 140-142.

21.     Defendants do not dispute material fact numbered 21.

22.     Defendants dispute material fact numbered 22 because there is no evidence to support the alleged facts in AR 140-142.

23.     Defendants dispute material fact numbered 23.  Special education teacher Annette Lanier was present at the meeting.  (AR at 136)  Angelo voluntarily took elective courses that he needed to graduate instead of some of his specialized instruction.  Angelo received specialized instruction in U.S. Government.  (AR at 137)  Angelo's case manager was monitoring his class work and Angelo was "on point."  (AR at 138)

24.     Defendants dispute material fact numbered 24.  DCPS determined that the student was not eligible for compensatory education for, among other reasons, the fact that Wilson Senior High School, the student's neighborhood school, had provided plaintiff with specialized instruction with special-education teachers according to his IEP. Further, encounter tracking forms from Angelo's social worker indicate that Angelo was often not available for counseling and refused counseling several times.  (TR at 48, 42)

25.-28.  Defendants do not dispute material facts numbered 25-28.

29.      Defendants dispute material fact numbered 29.  Angelo testified that he was taking remedial courses and that his grade depended on how he did in the final exam. (TR at 66)

30.      Defendants dispute material fact numbered 30.  Wilson Senior High School, the student's neighborhood school, provided Angelo with specialized instruction with special-education teachers according to his IEP.  Encounter tracking forms provided by Angelo's social worker indicate that Angelo was never available for counseling and that he refused counseling on a number of occasions.  (TR at 48, 42)

31.-32.  Defendants dispute material facts numbered 31-32.  Wilson Senior High School, the student's neighborhood school, provided Angelo with specialized instruction with special-education teachers according to his IEP.  (TR at 48)

33.      Defendants dispute material fact number 33.  The HO concluded that plaintiff failed to meet his burden of proving that compensatory education services were warranted.  (AR at 7)

34.      Defendants do not dispute material fact numbered 34.

35.      Defendants dispute material fact number 35.  A. failed to demonstrate that he had been denied FAPE.  Evidence at the hearing established that Wilson Senior High School provided A. with some specialized instruction and with courses taught by dually certified teachers.  (TR at 48) (AR at 137)

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor North
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625
E-mail – maria.merkowitz@dc.gov


January 18, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| ANGELO GREGORY-RIVAS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. - 06-563 (HHK) |
| DISTRICT OF COLUMBIA, *et al.,* | ) |
| Defendants. | ) |

_____

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     On October 3, 2005, the plaintiff filed a Due Process Complaint alleging that the District of Columbia Public Schools ("DCPS") denied him a free appropriate public education ("FAPE") by failing to comply with an August 29, 2005, Hearing Officer's Decision ("HOD").  (AR at 23, 29)

2.     The relevant issue presented to the Hearing Officer ("HO") at the August 15, 2005, hearing was whether DCPS had complied with a February 16, 2005, settlement agreement, which called for DCPS to convene an MDT/IEP meeting to review the student's evaluations, revise and update his IEP, discuss compensatory education, placement and the student's transfer of rights.  (AR at 43)

3.     While the MDT meeting was held, there was no discussion of compensatory education.  (AR at 43)

4.     In his August 29, 2005 decision, the HO determined that DCPS did not sustain its burden of proof.

5.    The HO also determined that the settlement agreement reached by the parties explicitly required the MDT to <u>discuss</u> compensatory education at the MDT meeting, but that no such discussion took place at the meeting."  (AR at 44)

6.    The HO ordered DCPS to convene a Multidisciplinary Team ("MDT") Meeting within thirty days of the issuance of the HOD – August 29, 2005, "to <u>discuss and determine</u> the amount of compensatory education the student is due and develop a compensatory education plan."  (AR at 45)

7.    The HO did not make a determination that any compensatory education was due.

8.    No appeal was taken from the August 29, 2005, HOD.  (AR 1-229)

9.    A Letter of Invitation was sent to plaintiff's counsel on October 6, 2005, proposing three dates for the MDT meeting.  Plaintiff's counsel was unavailable on all three dates.  (AR at 61, 66)  Subsequent Letters of Invitation were sent to Plaintiff's counsel on October 11, November 4, and November 14, 2005.  Plaintiff cancelled a meeting scheduled for November 22, 3005.  (TR at 5) Both parties ultimately agreed to the date of November 30, 2005.  (AR at 61-102).

10.   An MDT meeting was convened on November 30, 2005, to discuss the student's entitlement to compensatory education.  (TR at 48)  At that meeting it was determined that the student was not owed any type of compensatory education, "either by specialized instruction or related services."  (TR at 48) The decision was based on the fact that Wilson Senior High School, the student's neighborhood school, had provided plaintiff with specialized

instruction with special-education teachers according to his IEP. (TR at 48, 42)

11.    Many of the classes the student attended while at Wilson High School were taught by teachers who were dually certified in the subject matter and in special education. (AR at 137)

12.    In his senior year, the student received 10 to 15 hours in specialized instruction in one class—U.S. Government—and was taught Spanish by a dual certified special education teacher, adding to the number of specialized instruction hours he received. (AR at 137, TR at 49, 51, 53)

13.    The elective classes the student chose to take in order to timely graduate were monitored by the special education teacher for those classes. (TR at 49, 60)

14.    Some of the student's poor grades received while attending high school were the result of his not attending classes on a regular basis (TR at 40), of his being "real lazy" one year (AR at 137), and because of his behavior. (AR at 127)

15.    Another due process hearing was held on December 1, 2005. (AR at 2)

16.    At the time of the December 1, 2005, due process hearing the plaintiff was a twenty year old student who had graduated from Wilson Senior High School with a high school diploma in June 2005, and was attending the University of the District of Columbia. (AR at 43, 142)

17.    At the hearing, plaintiff's counsel stated that plaintiff was not seeking an award of compensatory education at the due process hearing but for an MDT meeting to be convened within five days. (TR at 15)

18.     After hearing testimony and evaluating the evidence, the HO concluded that

        the August 29, 2005, HOD "did not specify that Petitioner receive

        compensatory education services, but that the MDT should 'discuss and

        determine the amount of compensatory education the student is due,' leaving

        open the possibility that none was due." (AR at 5)

19.     Kevin Carter, plaintiff's witness testified that the student always wanted to

        graduate with a diploma and that the high school the student attended was

        aware of that fact. (TR at 42)

20.     Kevin Carter further testified that it was not possible for the student to receive

        a diploma of graduation rather than a certificate of attendance, if he had gotten

        specialized instruction. His graduation would have been delayed. (TR at 44)

21.     The plaintiff testified that he wanted to graduate in four years and that's why

        he took the extra electives in his last year. (TR at 72-73)

22.     By the time the student was in his senior year of high school he had already

        completed all his English credits and had received an A-minus in the two

        English courses he took.

                        Respectfully submitted,


                        LINDA SINGER
                        Acting Attorney General for the District of Columbia


                        GEORGE C. VALENTINE
                        Deputy Attorney General, Civil Litigation Division

                        /s/ Edward P. Taptich
                        EDWARD P. TAPTICH [012914]
                        Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor North
Washington, DC 20001
(202) 442-9842
FAX - (202) 727-3625
E-mail – maria.merkowitz@dc.gov

January 18, 2007