UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGELO GREGORY-RIVAS,<br><br>          Plaintiff,<br><br>     v.<br><br>DISTRICT OF COLUMBIA, et al.,<br><br>          Defendants. | Civil Action 06-00563 (HHK) |

MEMORANDUM OPINION

Angelo Gregory-Rivas ("Rivas"), a high school graduate of a District of Columbia Public School, brings this action against the District of Columbia and the superintendent of the District of Columbia Public School system (collectively "DCPS"), under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. Rivas challenges a hearing officer's determination that he was not entitled to compensatory education and asserts that the hearing officer neglected to address whether DCPS committed a procedural violation of IDEA. Presently before the court are the parties' cross-motions for summary judgment [## 8, 11]. Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that Rivas' motion for summary judgment must be denied and that DCPS' cross-motion for summary judgment must be granted.

I. BACKGROUND

A.    **Statutory Framework**

Congress enacted IDEA to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services

designed to meet their unique needs and prepare them for further education." 20 U.S.C. § 1400(d)(1)(A). IDEA requires states to "ensure that the rights of children with disabilities and parents of such children are protected." *Id.* § 1400(d)(1)(B). To receive funding under IDEA, states and the District of Columbia must ensure that "[a]ll children with disabilities residing in the State . . . regardless of the severity of their disability, and who are in need of special education and related services, are identified, located, and evaluated." 34 C.F.R. § 300.111(a)(1)(i). IDEA's free appropriate public education ("FAPE") provision entitles each disabled student to an individualized education program ("IEP") and educational services tailored to the unique needs of each disabled child. *See* 20 U.S.C. §1414(d)(2)(A) ("At the beginning of each school year, each [state] shall have in effect, for each child with a disability in [its] jurisdiction, an individualized education program."); 34 C.F.R. § 300.323(a).

Parents who disagree with the school's provision of a FAPE to their child may request an administrative hearing before an impartial hearing officer. 20 U.S.C. § 1415(f)(1)(a). The hearing officer's determination may be challenged in federal district court by an "aggrieved party." 20 U.S.C. § 1415(i)(2).

**B.     Factual Background**

Angelo Gregory-Rivas graduated from Wilson Senior High School in June 2005. For at least three years before his graduation, he was identified as a special education student. Rivas contends that during his last two years at Wilson, he was denied access to a FAPE and not afforded the protections to which he was entitled as a student with a disability.

Rivas submitted a total of three requests for administrative due process hearings on DCPS' failure to comply with IDEA. Each time, Rivas sought to have his IEP updated and

sought compensatory education to redress DCPS' alleged failure to provide him with a FAPE. DCPS twice entered into settlement agreements with Rivas. Therefore, the administrative due process hearings originally sought by Rivas were not held. According to Rivas, however, DCPS did not honor the terms of either settlement agreement. Thus, because DCPS allegedly continued to deny him access to a FAPE, Rivas filed a third request for an administrative due process hearing. This time, the parties did not settle and proceeded to an administrative due process hearing in August 2005 before Hearing Officer Coles B. Ruff, Jr. ("HO Ruff").

HO Ruff concluded that DCPS had violated the terms of the second settlement agreement, entered into with Rivas in February 2005, by failing to discuss compensatory education at the multidisciplinary team ("MDT") meeting. HO Ruff ruled that Rivas' right to compensatory education services was not terminated by his graduation from high school, A.R. at 44[1], and ordered DCPS to convene a MDT meeting within thirty days "to discuss and determine the amount of compensatory education the student is due and develop a compensatory education plan." *Id.* at 45.

DCPS failed to hold the MDT meeting within 30 days as had been ordered by HO Ruff and Rivas promptly responded by filing a fourth request for an administrative due process hearing. In this request, Rivas alleged that DCPS: (1) failed to comply with HO Ruff's order to convene a MDT meeting within thirty days; and (2) failed to provide Rivas with the compensatory education to which he was entitled. A due process hearing was scheduled for December 1, 2005. One day before the hearing, on November 30, 2005, a MDT meeting was convened and the MDT concluded that Rivas was not entitled to compensatory education. A.R. at 139.

---

[1] "A.R." refers to "Administrative Record."

3

The next day, on December 1, Hearing Officer Terry Banks ("HO Banks") dismissed Rivas' complaint. HO Banks determined that HO Ruff's determination did not mandate that Rivas receive compensatory education services but instead only mandated that the MDT meet to "'discuss and determine the amount of compensatory education the student is due,' leaving open the possibility that none was due." A.R. at 4. HO Banks also found that Rivas had not made the showing necessary to justify an award of compensatory education. *Id.* at 5-6. HO Banks did not address the issue of whether DCPS had violated IDEA by failing to hold a MDT meeting within 30 days of HO Ruff's decision as ordered.

Dissatisfied with this result, Rivas filed suit in this court.

## II. ANALYSIS

Rivas moves for summary judgment arguing that HO Banks: (1) erred when he reexamined the determination that HO Ruff assertedly made that Rivas was entitled to compensatory education; (2) erred in deciding that Rivas was not entitled to compensatory education; and (3) neglected to determine whether DCPS' failure to hold a timely MDT meeting violated HO Ruff's determination.[2] DCPS opposes Rivas' motion and cross-moves for summary judgment, maintaining that HO Banks properly decided not to award compensatory education to Rivas and that any noncompliance with HO Ruff's determination was moot. For the reasons that follow, the court concludes that DCPS is correct.

---

[2] The parties have cross-moved for summary judgment under Fed. R. Civ. P. 56, which provides for entry of summary judgment "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In an IDEA case, when neither party requests that the district court hear additional evidence prior to ruling on a motion for summary judgment, the motion will be construed as a "procedural vehicle for asking [a] judge to decide the case on the basis of the administrative record." *Herbin v. District of Columbia*, 362 F. Supp. 2d 254, 258 (D.D.C. 2005) (internal quotations and citations omitted); *accord Heather S. v. State of Wis.*, 125 F.3d 1045, 1052 (7th Cir. 1997).

4

### A.    Legal Standard

When reviewing a hearing officer's determination in an IDEA case, a district court shall review the administrative record, hear additional evidence presented at the request of the parties, and, based "on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B). In reviewing the determination, the district court must give the hearing officer's ruling "due weight." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982) (holding that this provision "carries with it the implied requirement that due weight shall be given to [the administrative] proceedings."). The "due weight" standard of review does not rise to the level of *de novo* review, however, and "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.* at 206. Instead, the court initially presumes that the hearing officer was correct and the party challenging the hearing officer's determination bears "the burden of persuading the court that the hearing officer was wrong." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988). Thus, while the standard employed by the district court to review the hearing officer's determination is "less deferential than that applied under the traditional substantial evidence test used in ordinary administrative review cases," *Scorah v. District of Columbia*, 322 F. Supp. 2d 12, 18 (D.D.C. 2004), provided that the basis for the officer's conclusion is clear and supported by "sufficiently reasoned, specific findings," the hearing officer's determination should not be upset. *Kerkam v. Superintendent, D.C. Pub. Sch.*, 931 F.2d 84, 87-88 (D.C. Cir. 1991).

**B.      Rivas' Entitlement to Compensatory Education Was Properly Before HO Banks**

Rivas first argues that HO Banks erred when he addressed whether Rivas was entitled to compensatory education services. According to Rivas, he already had been awarded compensatory education services by HO Ruff four months earlier. Under the "law of the case" doctrine, Rivas argues, a hearing officer is precluded from adjudicating an issue that has already been decided by another hearing officer.[3] DCPS rejoins that HO Ruff, as HO Banks found, only required DCPS to meet and discuss *whether* Rivas was entitled to compensatory education.

The relevant language in HO Ruff's order reads: "[w]ithin thirty (30) calendar days of the issuance of this Order DCPS shall convene a MDT meeting to discuss and determine the amount of compensatory education the student is due and develop a compensatory education plan." A.R. at 45. HO Banks concluded that this language required DCPS to "'discuss and determine the amount of compensatory education that the student is due,' leaving open the possibility that none was due." A.R. at 5. HO Banks noted that HO Ruff's order "did not specify that [Rivas] receive compensatory education services" and rejected Rivas' argument that the language in this order required DCPS to award Rivas such services.

---

[3] The "'[l]aw-of-the-case doctrine' refers to a family of rules embodying the general concept that a court involved in later phases of a lawsuit should not re-open questions decided (i.e., established as the law of the case) by that court or a higher one in earlier phases." *Crocker v. Piedmont Aviation, Inc.* 49 F.3d 735, 739 (D.C. Cir. 1995).
  Rivas' argument that this doctrine applies in the context of IDEA administrative hearings suffers from several problems. First, Rivas does not offer any authority, and this court is not aware of any, establishing that this doctrine applies in the context of IDEA administrative hearings. In fact, what little authority exists on the topic suggests the opposite. *See Lillbask v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005). Second, even if the doctrine were applicable in the IDEA administrative hearing context, it is well-settled that the doctrine is prudential and not mandatory. *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990).

Another factor in HO Bank's determination that HO Ruff did not find that Rivas was entitled to compensatory education services was the significance HO Banks found in the D.C. Circuit's decision in *Reid v. District of Columbia,* 401 F.3d 516, 526 (D.C. Cir. 2005). HO Banks determined, correctly, that *Reid* prevents a hearing officer from determining that a student is entitled to compensatory education services but then delegating the authority for deciding the type and amount of those services to a MDT. A.R. at 5. Thus, HO Banks rejected Rivas' proposed interpretation of HO Ruff's decision because it would have involved an illegal delegation of power.

Rivas argues that HO Banks was wrong because HO Ruff's order represents "the obvious recognition by the Hearing Officer of serial failure(s) of the defendants in the appropriate and timely implementation of Angelo's IEP." Pl.'s Opp'n to the Defs.' Cross Mot. for Summ. J. And Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") 7. This argument is unavailing for several reasons. First, Rivas neither identifies which part of HO Ruff's order evidences this "obvious recognition" nor points to any other part of the administrative record that justifies a conclusion different from the one reached by HO Banks. Furthermore, nowhere in HO Ruff's decision is the issue of DCPS' alleged "serial failure" to implement Rivas' IEP discussed. In contrast, one of the two conclusions of law reached by HO Ruff specifically addresses DCPS' failure to discuss compensatory education at a MDT meeting. Finally, Rivas fails to show how HO Banks' reliance on *Reid* and conclusion that Rivas' proposed interpretation would require an illegal delegation of a hearing officer's power and responsibility was wrong. Accordingly, Rivas' argument that HO Banks reached an unsupported or incorrect decision regarding whether compensatory education services were awarded by HO Ruff is not persuasive.

**C.     HO Banks Did Not Err in Denying Rivas Compensatory Education**

Rivas next argues that if compensatory education services were not awarded by HO Ruff then HO Banks erred in not awarding them to Rivas at the December due process hearing. DCPS contends that HO Banks properly concluded that Rivas was not denied a FAPE and was not entitled to compensatory education services. Again, DCPS' position has merit.

HO Banks first reviewed the MDT's decision not to award compensatory education services to Rivas and concluded that the team's decision was not in error. The MDT determined that Rivas was not entitled to compensatory education services because he "elected not to attend counseling services" and because he chose to "take regular education electives to assure his timely graduation" instead of taking available specialized education courses. A.R. at 5-6. HO Banks provided three reasons for upholding the MDT's decision. First, Rivas' transcript demonstrated his "ability to perform adequately in general education courses." *Id*. at 6. Second, as a nineteen year-old, Rivas had the legal authority under D.C. law to choose to take general education electives to fulfill his graduation requirements instead of special education courses. *Id*. Third, Rivas graduated with passing grades in both general education and special education courses. *Id*.

HO Banks next explained that Rivas had failed to demonstrate that he was entitled to compensatory education services under the standard set forth in *Reid*. *Id.* HO Banks stated that Rivas failed to show a denial of FAPE or "that he suffered any educational harm" from the denial of compensatory education services. *Id.* Rivas did not show the educational level he would have progressed to but for DCPS' alleged violation or that the desired compensatory education services would bring Rivas to that educational level. *Id.* Furthermore, the administrative record

8

reflects that HO Banks clearly identified *Reid's* requirements during the administrative due process hearing and offered Rivas the chance to remedy the shortcomings in his presentation. *See, e.g.* A.R. at 223 ("You've never shown us there was a harm."); *id*. at 227 ("under "Reed" [sic] there's a showing that Petitioner has to make.  You didn't make it . . . [t]here's no witness, no documentation that this violation caused him to need 2,000 hours of comp-ed." ).  Rivas did not provide any additional information to show his entitlement to an award of compensatory education services.  Thus, HO Banks determined that Rivas failed to "meet his burden of proving that compensatory education services were warranted." *Id*. at 7.

Rivas now argues that HO Banks applied the wrong legal standard and erred in denying Rivas compensatory education on the grounds that Rivas was ineligible as a high school graduate.  Neither of Rivas' arguments are persuasive.

With respect to his contention that HO Banks applied the wrong legal standard, Rivas argues that the standard employed by HO Banks "does not find traction within the four corners of *Reid*." Pl.'s Mot. 10.  While it is not entirely clear what Rivas means by this assertion, HO Banks clearly was aware of pertinent standards and employed them.  *Reid*, in pertinent part states, "[i]n every case, however, the inquiry must be fact-specific and, to accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Reid*, 401 F.3d at 524.  Thus, according to *Reid*, once a violation of IDEA has occurred, in order to craft an appropriate remedy, there must be a showing of the educational benefits denied to the student as a result of the school's failure to comply with IDEA. Pursuant to this language in *Reid*, which HO Banks quoted in his decision, HO Banks required

9

that Rivas establish the type and amount of compensatory services owed to him by DCPS in order to compensate for the services he was denied by DCPS. *See* A.R. at 5-6, 222-228. Because Rivas failed to make this showing, HO Banks concluded that any award of compensatory education services would be arbitrary. HO Banks' conclusion and reliance on *Reid* was justified and documented in the record.

Rivas also argues that HO Banks erroneously determined that Rivas' graduation from high school rendered him ineligible for compensatory education services. Rivas contends that a student's graduation does "not relieve DCPS of its statutory responsibility" under IDEA. Pl.'s Mot. 10-11. Rivas' argument is without merit. First, Rivas' eligibility for compensatory education services had already been conclusively resolved at the August hearing and was not contested by DCPS at the December hearing. A.R. at 43-44 ("The Hearing Officer is convinced after review of the case law presented by student's counsel that the student's right to compensatory education are [sic] not terminated by his graduation from high school."). In fact, HO Banks never questioned Rivas' eligibility to receive compensatory education services. Instead, HO Banks examined whether Rivas was entitled to receive them. HO Banks decided not to award Rivas compensatory education services because Rivas failed to meet his burden of establishing a need for these services and because Rivas had not been denied a FAPE. *See* A.R. at 6-7. Although HO Banks considered the fact that Rivas had graduated with passing grades in determining whether Rivas was entitled to receive services, HO Banks never reexamined Rivas' eligibility to received these services. *See* A.R. at 6-7.

**D.     DCPS' Failure to Hold a Timely MDT Meeting is Non-Actionable Under IDEA**

Rivas next argues that HO Banks erred when he failed to find that DCPS violated HO Ruff's order by not holding a MDT meeting within 30 days of the August hearing. DCPS concedes that the required MDT meeting was not held until November 30, 2005 but argues that HO Banks was correct in not finding DCPS in violation because the delay was non-actionable under IDEA. DCPS is correct.

"[A]n IDEA claim is viable only if those procedural violations affected the student's substantive rights." *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006). The procedural violation must "result in loss of educational opportunity or seriously deprive parents of their participation rights" in order to qualify as an actionable claim under IDEA. *Id.* (quoting *C.M. v. Bd. of Educ.*, 128 Fed. Appx. 876, 881 (3d Cir. 2005)). Provided that the "disabled child received (or was offered) a FAPE in spite of a technical violation of the IDEA, the school district has fulfilled its statutory obligations." *MM ex rel. DM v. Sch. Dist. of Greenville County*, 303 F.3d 523, 534 (4th Cir. 2002).

HO Banks was aware of HO Ruff's order and also aware that DCPS did not convene a MDT meeting until November 30. A.R. at 5. HO Banks was also aware that Rivas failed to make a required showing of harm as a result of DCPS' alleged violations of IDEA. A.R. at 223, 224 ("I haven't heard anything as to why, as to what level of harm he suffered, as a direct result of this particular violation."). Thus, as Rivas failed to make the requisite showing of harm, DCPS' delay in convening the MDT meeting was non-actionable and HO Banks correctly did not find DCPS in violation of IDEA.

### III.  CONCLUSION

For the foregoing reasons, the Court finds that Rivas' motion for summary judgment [#8] must be **DENIED** and DCPS' cross-motion for summary judgment [#11] must be **GRANTED**. An appropriate order accompanies this memorandum.

Henry H. Kennedy, Jr.<br>
United States District Judge

Dated: September 8, 2008